Robert Ernest BROWN and Timothy R. Dotson, Appellants and Cross-Respondents,

v.

MICHIGAN MILLERS MUTUAL IN- SURANCE COMPANY, INC., Re- spondent and Cross-Appellant.

No. WD33551.

Missouri Court of Appeals, Western District.

Nov. 22, 1983.

As Modified Jan. 31, 1984.

Application to Transfer Denied March 20, 1984.

David R. Morris, Richard L. Sandler, Kansas City, for appellant; Shook, Hardy & Bacon, Kansas City, of counsel.

Max Von Erdmannsdorff, Kansas City, Von Erdmannsdorff & Zimmerman, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

DIXON, Presiding Judge.

These are cross appeals from jury verdicts in favor of plaintiffs in the amount of $25,000 for each plaintiff.

The appeal of defendants Michigan Millers Mutual Insurance Company, Inc., and The Mill Mutuals assert a claim of error by the trial court in overruling their motion for directed verdict at the close of the evidence. Defendants' claim in that respect is further circumscribed by the manner the issue was preserved in their post trial motion for judgment notwithstanding the verdicts since no motion for a new trial was filed. Plaintiffs' cross appeal raises a single issue, under a motion for new trial,

that a new trial on the issue of damages was required by identical verdicts for each plaintiff under disparate evidence of injury to the two plaintiffs.

Fortuitously, this extraordinarily complex litigation, which spawned hundreds of pages of testimony and a multitude of exhibits, has by circumstance been resolved to a procedural posture that requires only a terse statement of facts.

The plaintiffs were both badly injured and burned in an explosion that occurred at a grain elevator. Plaintiffs were present as employees of an independent contractor that had been engaged to clean up a spill of aureomycin. The cleanup was being conducted by a vacuum machine that had been connected to the already installed pneumatic conveyance system of the mill. The explosion occurred as a result of the buildup of static electricity in the plastic pipe used in the conveyance system. The suit was originally filed against Desert Gold Food Company, Inc., Douglas Chemical Company, Federal Insurance Company, Chubb & Son, Inc., American Cyanamid Company, Don Ellison, Leland E. Dailey, The Mill Mutuals, and Michigan Millers Mutual Insurance Company, Inc. All of the parties settled during trial except defendants The Mill Mutuals and Michigan Millers Mutual Insurance, Inc. These settlements totaled $275,000 to each plaintiff, and the jury was informed of both the settlements and the amounts. The plaintiffs' theory of recovery against the remaining defendants was that they had undertaken to inspect for hazards and failed to discover the plastic pipe, although they knew or should have known that the condition was hazardous. The issues in the case were submitted under instructions that contained elements of Restatement (Second) of Torts § 324(A) (1965), which predicates liability upon such a theory. The jury returned verdicts for both plaintiffs in the identical amount of $25,000. The Restatement section involved is in terms as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The issues on the appeal of Millers arise under the post-trial motion for judgment n.o.v. No motion for new trial was filed.

The first six paragraphs of the motion for judgment notwithstanding the verdict describe the proceedings at trial, including the filing of the motions for directed verdict, but raise no claim of error. In paragraph seven the defendants assert that the court overruled the grounds asserted in paragraph 6 of the motion for directed verdict. Paragraph 8 of the post-trial motion then recites the verdict and judgment. The only paragraph asserting error is in the following language:

9. That the Court's failure to grant defendant's Motions for Directed Verdicts at the Close of All the Evidence, *on the ground that plaintiffs' evidence had failed, as a matter of law, to establish* a claim under Restatement (Second) Torts, § 324 A (1965), constituted error for which defendant is now entitled to relief under Rule 72.01(b) of the Supreme Court Rules.

(Emphasis added).

The single ground relied on in the motion for judgment n.o.v. was the failure of the trial court to sustain paragraph six of the motion for directed verdict. Paragraph six of the motion for directed verdict reads as follows:

6. Even if plaintiff has established a duty on the part of defendants, *plaintiff's evidence* in support of Counts XI and XII *is insufficient to show:*

A. That defendants failed to exercise reasonable care in performing their duty;

B. That some failure by defendants to exercise reasonable care increased the risk of any harm to plaintiff;

C. That plaintiff suffered his injuries because of his reliance upon defendants to perform a duty owed to him.

(Emphasis added).

A great deal of prolix briefing and argument represents an attempt by Millers to convert the appeal into an attack upon a broad range of issues not preserved specifically by the motion for judgment n.o.v.

■ Confronted with these problems, the defendants have filed a reply brief asserting that under *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), the briefing is adequate and that *Frisella v. Reserve Life Insurance Co. of Dallas*, 583 S.W.2d 728 (Mo.App.1979), is authority supporting the defendants' claim that the judgment n.o.v. motion preserved more than a literal reading of the post-trial motion suggests. Defendants' reply brief has narrowed the issues and defined them more carefully. It is a dubious proposition that *Frisella* and *Thummel* save the day when the fundamental thrust of appellate review is considered. Appellate review in this state does not require this court to search for error, but the appellant has the burden to demonstrate preserved error which requires reversal. *McCandless v. Manzella*, 369 S.W.2d 188 (Mo.1963); *Sorrell v. Hudson*, 335 S.W.2d 1 (Mo.1960). Despite the uncertainty of preservation of error and the appropriateness of the appellants' original briefing, the substance of the points presented as refined by the reply brief will be considered.

Despite the specific concession in the motion for directed verdict that a duty was "assumed," defendants continue to assert that there is no evidence to support a finding of a duty to plaintiffs undertaken by defendants to make the Desert Gold plant safe by conducting inspections.

In arguing this point, defendants assert that the requirements of Restatement (Second) of Torts § 324A (1965) are not satisfied by the evidence submitted in support of plaintiffs' case. Defendants continue to urge the applicability of Section 324A, but determining the applicable law is made somewhat difficult because of the defendants' failure to file a motion for a new trial or to specifically raise the issue of the plaintiffs' right to recover as a matter of law. The plaintiffs do not concede that their recovery is circumscribed by Section 324A. They assert that under common law principles they are entitled to recover if defendants undertook to act even without a duty to act and negligently performed the act.

First, as to defendants' contention that the requirements of Section 324A are not met by the evidence presented by plaintiff, the defendants rely on Michigan authority on this branch of the case. *Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685, 303 N.W.2d 702 (1981), and *Sabraw v. Michigan Millers Mutual Insurance Co.*, a companion case. The companion case involving the same defendant Millers Mutual Insurance Co. is analogous to the instant case. There a grain explosion occurred ostensibly because a vehicle with an overheated muffler came in contact with grain dust. The insurer defendant had made periodic inspections. There was a dispute in the evidence as to the use of the offending vehicle in the mill when inspections occurred. The Michigan court held that the facts gave rise to no duty on the part of the insurer and that plaintiffs could not recover. The opinion extensively discusses Section 324A, the court reasoning that for a duty to arise the "undertaking" required by 324A must confer or intend a benefit on the owner of the mill. *Smith, supra*, 303 N.W.2d at 711. The Michigan court conceived of the inspections as self-serving activities upon the part of the insurer. *Smith, supra*, 303 N.W.2d at 713–715.

The instant case is factually distinguishable from *Smith* and *Sabraw*. The record in this case includes the advertisements of the defendants and the so-called "Midkiff letter." The "Midkiff" letter was the original proposal to provide coverage through defendants for mills to be purchased by Douglas Chemical Company.

The advertisements in evidence strongly implied a benefit to the insured from the proffered inspection services. The text stated that if "someone gets hurt ... you will lose" and stated "your Mill Mutual engineer is specially trained ... to lower the probability [of accidents] substantially. He will examine your property and *offer* suggestions that over the years have helped others avoid disastrous losses...." The advertisements represented that the inspections were a benefit to the insured. The testimony of the Desert Gold employees unequivocally showed a reliance upon the inspections and tht the advertised benefit from the inspections was an inducement to procure the defendants' insurance. It is true, as the Michigan court found, that such insurance company inspections are also of benefit to the insurer in reducing the hazards of underwriting. However, that dual nature of the benefit derived does not remove the inspection process from the scope of the "undertaking" envisioned by Section 324A.

The "Midkiff" letter further supports the conferring of a benefit from the inspection services. Commencing with a listing "surplus to policy holders" of over 50 million dollars and asserting a dividend to policy holders of "25%" (apparently of premiums paid), it quoted Bests Insurance Guide of 1959 regarding the operation of Mill Mutuals: "Business is closely investigated and inspected by direct representatives, and efficient engineering and service departments are maintained." In addition, the letter included a summary of "advantages" to the Douglas Chemical Company of insuring in the Mill Mutuals. Two of the advantages listed were "Minimum premium costs" and "Inspection service provided to reduce hazards present in all grain handling plants." Thus, even under the analysis of the Michigan court, the benefits of the underwriting were also benefits to the insured.

Taking the defendants' analysis of the Michigan case directly from their brief, "the Michigan Supreme Court ruled that before liability might arise, the defendants either had to have agreed or intended to benefit their insureds." The record before us demonstrates such an intended benefit.

Contrary to *Smith, supra,* is *Nelson v. Union Wire Rope Corp.,* 31 Ill.2d 69, 199 N.E.2d 769 (1964), which predicates liability on the undertaking to inspect that was performed negligently. *Smith,* in a footnote, distinguishes *Nelson* by asserting that the presence of advertising or communications of benefits to policyholders would render the insurer liable for a failure to use due care. *Smith, supra,* 303 N.W.2d at 719 n. 49. Such a distinction could not be drawn on the instant record.

As previously noted, the plaintiffs contend they are entitled to recover on common law principles aside from the Restatement rule. The procedural posture of this case is important in considering this contention. Because the only claim of defendants is that a motion for a directed verdict should have been sustained, attention focuses on the case at that stage. What instructions were given and what theory of submission was adopted is irrelevant. If under the facts presented any viable theory of liability is supported, the motion for a directed verdict is to be overruled. *Teichman v. Potashnick Construction Co.,* 446 S.W.2d 393, 395 (Mo. banc 1969).

Missouri case law supports the proposition that one who acts gratuitously or otherwise is liable for the negligent performance of the act, even though there was no duty to act. *Berry v. Emery, Bird, Thayer Dry Goods Co.,* 357 Mo. 808, 819, 211 S.W.2d 35, 41 (1948); *Wolfmeyer v. Otis Elevator Co.,* 262 S.W.2d 18, 23 (Mo. 1953). This cited authority has been recently recognized as stating a valid principle. *Teichman, supra,* 446 S.W.2d at 399–400; *Rossmann v. G.F.C. Corp. of Missouri,* 596 S.W.2d 469 (Mo.App.1980). Although recovery was denied in *Teichman,* the majority recognized the rule in *Berry, supra,* but found that factually the proof did not support a recovery on that theory. The dissent viewed the facts as requiring application of the principle and

reviewed the authority establishing the principle. *Teichman, supra,* 446 S.W.2d at 402–04 (Stone, S.J., dissenting).

Thus, under this theory, there is a factual basis for submission. Defendants, for whatever reason, undertook to inspect for hazards. The evidence unquestionably demonstrates that the existence and use of the plastic pipe was a hazardous condition.

■ The defendants further argue that there is no evidence that they were aware of the existence of the plastic pipe. They insist it was not visible in the location where it was installed in the manlift. Mr. McCaslin, an officer of Desert Gold, testified that there was only one plastic pipe inside the mill. There was another plastic pipe not then in use outside the mill. Purchase records showed that the inside pipe was installed in the spring of 1974. The inspection reports of defendants were in evidence, and the report dated August 5, 1974, contains the following:

> While I was making inspection, they did have a static electrical problems [*sic*] on the plastic six inch pipe running from their pellet cooler to the headhouse. This is where they blow the pellets into the overhead bins. This had an arc of approximately ½″, according to the superintendent. The maintenance man and electrician was bonding and grounding this plastic pipe. He clamped it to the metal pipe where the plastic connects into and wrapped the ground wire around the plastic pipe and also connected it to the cooler, then they were going to ground it to the rigid conduit.

This demonstrates actual knowledge by the defendants of the static electricity discharge from use of a plastic pipe.

The transcript is replete with evidence from witnesses as to the visibility of the plastic pipe in the manlift shaft. Several of the workmen who were present at the time of the explosion recounted the experience of hearing a sound like a twenty-two rifle, looking in the shaft, and seeing sparks near the plastic pipe. One said that from the main floor he could see 15 or 20 feet up the shaft. There were lights at intervals up the manlift shaft sufficient for a witness to see dust in the shaft. The workmen, plaintiffs in this case, entered the basement by means of a ladder in the manlift shaft. There were electrical conduits in the manlift shaft. One of the pictures in evidence was taken facing the entrance to the manlift on the main floor of the mill. The picture demonstrates that anyone facing the manlift entrance would by the most casual observation see the plastic pipe and the conduits. Several of the inspection reports made by the defendants involved the basement area. Many if not all of the reports indicate an inspection of the wiring that indicates all conduit was inspected. In the light of these facts, the claim of defendants that their inspections would not have disclosed the presence of the four inch plastic pipe in the manlift shaft is frivolous. It was in open sight to anyone who descended the ladder to the basement or who examined the conduit in the manlift shaft. As has been noted, there was actual knowledge of the danger of sparks from static electricity. There was unquestionably a basis for the jury to find negligence in the inspections by the defendants.

Defendants also argue that an alleged lack of privity between plaintiffs and defendants required direction of the verdict in their favor. They concede this point was raised only in suggestions filed. Without deciding that such a procedure properly raises the issue, the contention will be reviewed.

■ Defendants urge that unless the four factors identified in *Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.,* 493 S.W.2d 378, 383 (Mo.App.1973), are present, a lack of privity will bar tort recovery based on breach of a contractual duty. As has been stated, this case does not necessarily turn on a contractual duty between Desert Gold and defendants. Even if such were true, the claimed deficiency under *Aluma Kraft* that the "contractual" duty to inspect was not of benefit to Desert Gold or the plaintiffs is nonexistent. The discussion above of the defendants' advertising and representations

shows that there was not only a benefit to Desert Gold but as well a claim by the defendants that the defendants' inspections would benefit the class of persons to which plaintiffs belong by making the insured mills safe places to work through accident prevention measures.

■ Defendants also argue that Section 324A requires that plaintiff show reliance upon the defendants' undertaking by Desert Gold. Noting again that the issue is whether the evidence is sufficient to support a viable theory, the defendants' claim is without merit. Even if the test of the evidentiary sufficiency is made in terms of the application of Section 324A, the contention must fail. Section 324A alternatively requires:

> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The proof clearly shows that the risk of harm to these plaintiffs was enhanced by the failure of defendants to advise the Desert Gold Mill to discontinue use of the plastic pipe. That proof satisfies one of the alternative requirements of the Restatement.

Finally, the defendants again repeat that under the Restatement the record does not show a basis for a finding of negligence. What has heretofore been stated as to the actual knowledge of the danger of sparks from plastic pipe and the visibility of the four-inch pipe shows that the contention is factitious and without merit.

■ There was a point in the original appellant's brief complaining about evidentiary support for instructions. Such error, if there was any, is not reviewable in the posture of this case, there being no motion for a new trial. Rule 78.07.

■ Turning to the plaintiffs' cross appeal, only one issue is presented. Plaintiffs claim that under the evidence the verdicts should not stand. They argue the injuries and damages of the plaintiffs are disparate and conflicting. Thus, they insist the trial court abused its discretion in denying plaintiffs' post-trial motions requiring a new trial on the issue of damages alone. Plaintiffs argue that the facts of disparate injuries make the instant case analogous to *Stahlheber v. American Cyanamid Co.*, 451 S.W.2d 48 (Mo.1970), in which a grossly disproportionate award to a husband for loss of services was remanded for new trial. No such disproportion appears in this record based upon the total recovery by each plaintiff of $300,000, including the instant judgment. There is no basis for finding an abuse of discretion.

The verdicts and judgments are affirmed.

All concur.