**James D. PEELER and Eleanor Sue Peeler, Appellants,**

v.

**Lyle DeWITT, Respondent.**

**No. WD 56619.**

Missouri Court of Appeals, Western District.

Oct. 26, 1999.

David Reed and Ronald J. Stites, Kansas City, for Appellant.

Michael G. Norris, Overland Park, for Respondent.

PAUL M. SPINDEN, Judge.

When James D. Peeler fell on steps to the Sullivan County courthouse, he and his wife sued Lyle DeWitt, a retired architect who had gratuitously advised the county about specific repairs it should make to its deteriorating courthouse. The Peelers averred that DeWitt had an obligation to point out to the county the lack of handrails on the steps because, as an architect whom the county consulted about renovations to the courthouse, he should have known of the danger posed by the lack of handrails and warned the county about the danger.

The circuit court issued summary judgment in favor of DeWitt. The Peelers appeal. Because the record does not dispute DeWitt's contention that he agreed to advise the county about only specific matters that did not include safety hazards in the courthouse, we concur in the circuit court's summary judgment for DeWitt. This record establishes that he did not breach his duty to act as a reasonably prudent architect.

This dispute had its roots in a decision 12 years ago by Sullivan County's commissioners to arrest its courthouse's deterioration. It formed a courthouse restoration committee to raise money and to recommend what repairs and improvements were needed to preserve the courthouse. The committee consulted with DeWitt, then retired from his architectural practice and owner of an area farm, because he had designed the courthouse originally. According to Mike Hepler,[1] county clerk, DeWitt's advice was restricted to specified areas. Hepler said, "[W]hen we asked [DeWitt] for help, we asked him specifically in the areas that we were looking at wanting help with." According to Hepler, the committee asked DeWitt to advise them concerning the courthouse's heating problems, weather intrusion, restoration of the courthouse's window wells, the "old community room," elevators, and restrooms. They did not ask or consult him about safety hazards, and he offered no advice about safety hazards. DeWitt received no compensation for his advice. The committee decided that it would recommend to the county commission that it do whatever DeWitt recommended. The committee did not have a written agreement with DeWitt.

We find no evidence that the committee included within the scope of DeWitt's work concern about safety hazards in the courthouse, and we find no evidence that DeWitt assumed a search for safety hazards in his work for the committee. The evidence indicates that the scope of his task and his advice concerned only what the county needed to do to arrest the building's deterioration. Hepler said that the priorities for the repairs centered on "keeping the weather out of the building."

To establish that DeWitt was negligent, the Peelers had the burden of establishing that DeWitt had a duty to the Peelers, that he failed to perform his duty and that this failure was the proximate cause of the Peelers' injuries. *Burns v. Black and*

1. Hepler worked with the committee from 1987 to 1992. As the county clerk, Hepler was the county's chief financial and budget officer. He oversaw repair of buildings and was responsible for the courthouse grounds.

*Veatch Architects, Inc.,* 854 S.W.2d 450, 452–53 (Mo.App.1993).

▪ Duty is a matter of law to be determined by the court. *Case v. Midwest Mechanical Contractors, Inc.,* 876 S.W.2d 51, 53 (Mo.App.1994). Duty emanates from the relationship of persons by imposing on a person a legal obligation for the benefit of another person. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 431–32 (Mo. banc 1985). No one questions that DeWitt had a duty to carry out his work for the committee in conformance with what a reasonably prudent architect would have done. *Chubb Group of Insurance Companies v. C.F. Murphy and Associates, Inc.,* 656 S.W.2d 766, 774 (Mo.App. 1983). The Peelers, however, submitted the affidavit of an architectural expert who opined that, because DeWitt was advising the county about renovation of its courthouse, he should have warned the county that its north steps were unsafe because of the missing handrails. The expert, J. Kurt von Achen, said:

> [I]f an architect is advising a client with respect to the renovation of a courthouse and the steps going up to an entrance to the courthouse which are over 8 feet wide lack any railing, use of the degree of skill and learning ordinarily used under the same or similar circumstances by members of the Architect's profession would mandate that he call to his client's attention the fact that there was no railing and that acceptably safe practice required that railings be installed.

The circuit court correctly concluded that this opinion did not create a material issue of fact because von Achen based his opinion on an assumption that DeWitt advised the county concerning general renovation of the courthouse. The record did not include any evidence that supported such an assumption. The only evidence concerning DeWitt's scope of work was that his advice was limited to specific areas with which the county was seeking help. Hence, even if we presume that von Achen's opinion was correct, it was not applicable to this case.

The Peelers provided the circuit court with no basis for concluding that DeWitt had an obligation to look for safety hazards. DeWitt fulfilled his agreement to help the restoration committee by advising them concerning the subjects about they asked him, primarily involving ways to arrest the courthouse's deterioration. Given the scope of DeWitt's assignment and the nature of his agreement with the county, the circuit court properly granted DeWitt's motion for summary judgment.

The Peelers rely on the statement of Don Scott, treasurer and collector of Sullivan County, as an articulation of the scope of DeWitt's assignment. Scott said:

> I asked [DeWitt] if he would help us in our renovation work and he said he would.... I recall that Mr. DeWitt provided certain recommendations to the renovation committee from time to time. I have no personal recollection of a time when his recommendations were not followed.... The committee would present plans to the County Commission and request their approval. I recall no instance when they objected to a committee proposal.... Lyle DeWitt was around the courthouse from time to time while the renovation work was going on and I believe he would have seen the whole building including the north steps, although I can't say for sure that he did.

Scott's statement does not contradict Hepler's testimony that DeWitt's advice was restricted to specific projects with which the county was seeking help. Moreover, DeWitt's having reason to see—or even to walk on—the north steps is inconsequential without evidence that he had assumed a search of safety hazards in his work for the committee. This record does not support such a notion.

The Peelers also point to statements by Broyles and Robert Wilson. Broyles said:

> I remember that the committee decided that they would follow the architect's

advice as to what was to be fixed and renovated. The committee consulted Lyle DeWitt as to what was to be done and what he recommended to be done was done.... Mr. DeWitt was at the courthouse quite often.... If Mr. DeWitt had recommended that railings be installed up the steps to the North door of the courthouse, we would have done it.

Wilson said that he attended the organizational meeting of the courthouse renovation committee and that the committee voted unanimously to follow DeWitt's priorities. Neither of these statements established that DeWitt had a duty to advise Sullivan County regarding safety hazards at the courthouse. Nor do the statements contradict Hepler's testimony regarding the scope of DeWitt's assignment.

The Peelers rely on *Berry v. Emery, Bird, Thayer Dry Goods Company*, 357 Mo. 808, 211 S.W.2d 35 (1948), and *Brown v. Michigan Millers Mutual Insurance Company, Inc.*, 665 S.W.2d 630 (Mo.App. 1983), as support for their contention that DeWitt had a duty to warn of a need for a handrail on the north steps. Their reliance on these cases is misplaced.

In *Berry*, the store replaced and maintained a city light pole in front of the store. When the light pole fell and injured a pedestrian, the court found the store liable because it had assumed responsibility for maintaining the light pole and, therefore, had assumed a duty to exercise due care in maintaining it in a reasonably safe condition for pedestrians. *Berry*, 211 S.W.2d at 41. The court said, " 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' " *Id.* at 41 (citation omitted).

In *Brown*, the court found that a liability insurance carrier was liable for injuries resulting from a grain elevator explosion because the insurance carrier had assumed responsibility for inspecting the grain elevator for hazards. The court held, "Missouri case law supports the proposition that one who acts gratuitously or otherwise is liable for the negligent performance *of the act*, even though there was no duty to act." *Brown*, 665 S.W.2d at 634 (emphasis added).

In both of these cases, the defendants assumed the obligations for which they were found liable. In *Berry*, the defendant assumed control and maintenance of the light pole, and, in *Brown*, the insurance carrier undertook the duty to make safety inspections. We find no evidence that DeWitt assumed the obligation of evaluating the courthouse for safety hazards.

■ The Peelers' contention that an architect must consider safety when he or she undertakes an architectural project seems to be correct. An architect, however, does not become responsible for the safety of the entire project when he or she does not undertake architectural responsibilities for the entire project.

We, therefore, affirm the circuit court's granting of summary judgment in favor of DeWitt.

PATRICIA BRECKENRIDGE, Presiding Judge, and JAMES M. SMART, Judge, concur.