Timothy C. DONAHUE,
Plaintiff–Appellant,

v.

CITY OF ST. LOUIS,
Defendant–Respondent.

No. 70017.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1988.

Rehearing Denied Oct. 18, 1988.

Dissenting Opinion of Judge Robertson
Modified Oct. 18, 1988.

Thomas J. Prebil, St. Louis, for plaintiff-appellant.

Elkin L. Kistner, Ass't. City Counselor, James J. Wilson, City Counselor, St. Louis, for defendant-respondent.

WELLIVER, Judge.

Appellant, Thomas C. Donahue, brought this action against respondent, City of St. Louis, for damages that resulted from an automobile accident at an intersection. Respondent filed a motion to dismiss for failure to state a claim. The trial court sustained respondent's motion. The Court of Appeals, Eastern District, reversed and remanded holding that under their reading of our prior cases sovereign immunity was waived by the dangerous condition of property exception of § 537.600, RSMo 1986. We transferred the case and decide it as on original appeal. Mo. Const. art. V, § 10. We reverse and remand.

The vehicle accident here involved occurred on December 12, 1985. Simply stated, plaintiff alleges in his pleadings that the city street stop sign was down and was not visible to motorists entering the intersection from the direction which he was traveling and that this constituted a dangerous condition of the city's property within the meaning of § 537.600.

On September 12, 1977, this Court handed down *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), a case dealing with the design and maintenance of a state highway. The allegations were negligence in design, maintaining a dangerous condition and failure to warn thereof. The Court, utilizing the case as a vehicle, not only abrogated sovereign immunity as to roads and highways, but "declare[d] that the government shall be liable for its torts" across the board. *Jones*, 557 S.W.2d at 228.

The State Highway Commission, cities, and counties mustered their troops and sought relief from the *Jones* decision in the Seventy–Ninth General Assembly, Second Regular Session, 1978. After introduction of several bills and days and weeks of debate, C.C.S.S.S.S.C.S.H.S.H.B. 1650, Laws 1978, pp. 982–85, effective August 13, 1978, became § 537.600, RSMo 1978. This was the legislative response to the abrogation of sovereign immunity in general and to suits for damages for faulty

design, construction, and maintenance of roads and highways, in particular. Sovereign immunity was reinstated with two exceptions: (1) governmental operation of motor vehicles, and (2) dangerous condition of government-owned property.

There followed a series of cases attempting to broaden property into something other than buildings and appurtenances. They were: *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864 (Mo. banc 1983), where a student alleged the school was negligent in permitting an unruly student on a school bus owned by the district; *Twente v. Ellis Fischel State Cancer Hospital,* 665 S.W.2d 2 (Mo.App. 1983), in which a woman was raped on the parking lot of the State Cancer Hospital; and *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831 (Mo. banc 1985), in which a prisoner escaped from a correctional institution through inadequate fences and unlocked gates. In all of these cases we denied recovery. Another case was an Eastern District case, *Zubcic v. Missouri Portland Cement Company,* 710 S.W.2d 18 (Mo.App.1986), where a construction worker was buried alive during construction of a sewer trench. The Court found that the sewer trench was not the kind of property contemplated by the statute.

It was in this background that the Eastern District ruled that the broken down stop sign constituted a dangerous condition of government-owned property based upon their interpretation of the language of our and their prior cases.

By the time this accident occurred on December 12, 1985, two different general assemblies had dealt with § 537.600. The second general assembly dealing with the statute added a substantial amendment to the original statute, H.C.S.S.B. 323, Laws 1985, pp. 635–36, effective September 28, 1985. The section as it existed on the date of the accident provided as follows, with the 1985 amendment underlined:

**537.600. Sovereign immunity in effect —exceptions—waiver of**

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles *or motorized vehicles* within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. *In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.*

2. *The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the pub-*

*lic entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.* § 537.600, RSMo 1986.

The question for decision is not whether our prior cases interpreting the original statute had eroded or changed the dangerous condition of government property exception to the point that it included roads and highways, but rather, interpreting the meaning and effect of the 1985 amendment which directly addresses governmental immunity as it relates to roads and highways.

In two cases, our appellate courts have noted that they were bound to decide their case on the original version of § 537.600, RSMo 1978, because the cause of action accrued prior to the effective date of the amendment, thereby permitting us to infer that they likely would have reached the interpretation which we reach today, had they been permitted to do so. *Aylward v. Baer*, 745 S.W.2d 692 (Mo.App.1987) (involving defective or inadequate street lights); *State ex rel. Missouri Highway and Transportation Comm. v. Ryan*, 741 S.W.2d 828 (Mo.App.1987); (a writ case involving a dangerous condition of a highway.)

■ Words used in statutes are to be considered in their plain and ordinary meaning in order to ascertain the intent of the lawmakers. *Schneider v. State, Division of Water Safety*, 748 S.W.2d 677, 678 (Mo. banc 1988); *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 867 (Mo. banc 1983).

■ On its face, the purpose of the amendment would appear to be reinstatement of the holding of *Jones* as it relates to roads and highways plus opening the door to some degree prior to *Jones*. The remaining question then becomes whether traffic controls such as are here involved are encompassed in the negligent, defective, or dangerous design of roads and highways. We believe the primary purposes in the design of roads and highways are (1) expediting the flow of traffic, and (2) safety. Traffic control and control devices are an integral part of expediting

traffic flow and attaining safety, and design, of necessity, is a continuing process which encompasses such things as widening, changing of grades, resurfacing, and installation of lights and traffic controls. We are compelled to hold that this traffic control device was contemplated within the clear unambiguous meaning of the words used in the amendment.

In looking to other jurisdictions, we find no statute worded as ours is worded. By way of analogy, they are persuasive. In *Stephen v. City and County of Denver*, 659 P.2d 666 (Colo. banc 1983), the Colorado Supreme Court viewed stop signs as an integral part of roads and highways, and found that the negligent maintenance of a stop sign came within the dangerous condition exception to sovereign immunity. In *Fretwell v. Chaffin*, 652 S.W.2d 755 (Tenn. 1983), the Tennessee Supreme Court held that the statutory exception to sovereign immunity included improperly maintained street signs and traffic control devices. In *Brown v. State Highway Commission*, 202 Kan. 1, 444 P.2d 882 (Kan.1968), the Kansas Supreme Court held that a stop sign, obstructed from view by shrubbery, was a defect in the state highway.

The historical background in which the 1985 amendment was made; the affirmative act of the legislature abolishing the distinction between governmental and proprietary acts as a test of governmental liability; and the declaration in the amendment that whether or not there exists the insurance coverage contemplated by § 537.610 shall have no application to road and highway cases; all suggest the correctness of our interpretation of the amendment.

One other aspect of the 1985 amendment is indicative of the intent of the legislature. The original 1978 enactment of § 537.600, RSMo 1978, restored total immunity to all governmental entities relating to defects in roads and highways. The 1985 amendment now permits suits against governmental entities for roads and highways designed prior to September 12, 1977, the effective date of *Jones*, and gives to the public entity

a defense of "state of the art" as a complete bar to recovery "whenever the public entity can prove [the defense] by a preponderance of the evidence." § 537.600.1(2), RSMo 1986. On all other suits filed pursuant to the amendment, the jury will decide questions of defective design and dangerous condition of property as in other tort cases.

Relief for the City of St. Louis, the amicus Missouri State Highway Commission, and other public entities lies not in the shelter of our decisions but in finding direct relief from the amendment.

We find that appellant's petition, while not pleading in the exact words of the amended statute, is sufficient to state a cause of action under the statute as amended.

We reverse and remand for further proceedings consistent with this opinion.

BILLINGS, C.J., and DONNELLY and HIGGINS, JJ. concur.

RENDLEN, J., dissents.

ROBERTSON, J., dissents in separate opinion filed.

BLACKMAR, J., dissents and concurs in separate dissenting opinion of ROBERTSON, J.

ROBERTSON, Judge, dissenting.

I respectfully dissent.

The Court holds today that the City of St. Louis may be liable for failing to replace a fallen stop sign. The majority opinion states that the critical consideration upon which its decision turns is the interpretation of the 1985 amendment to Section 537.600 "which directly addresses governmental immunity as it relates to roads and highways." (At 52). In my view, the 1985 amendment makes no difference to the resolution of this case. Yet, in the process of deciding this case on an irrelevant statutory amendment, the Court fails even to undertake a critical examination of that amendment within the context of the statute. Further, the Court ignores the time-worn imperative that statutes in abrogation of sovereign immunity must be strictly construed. *Bartley v. Special School Dist. of St. Louis County*, 649 S.W.2d 864, 868 (Mo. banc 1983). In so doing, the Court errs.

The relevant 1985 amendment provides: "In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road ..." sovereign immunity is maintained as a defense provided the road was constructed or designed prior to September 12, 1977, and the governmental entity can prove that the design "reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed or constructed." Section 537.600.1(2). In context, the careful reader immediately notes that while the original language of the statute applies to a dangerous condition of property, the amendment refers to roads and highways which are dangerously designed.

In *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985), this Court found that a dangerous condition of property within the meaning of Section 537.600.1(2) referred to "defects in the physical condition of the public entity's property." Thus a defect in condition exists through either "faulty construction or maintenance in the condition of ... property." This definition is consistent with the ordinary meaning of the word "condition", *Buechner v. Bond*, 650 S.W.2d 611, 613 (Mo. banc 1983), to which Webster's Third New International Dictionary 473 (1966) ascribes the meaning "the physical status of a body as a whole".

"Design" on the other hand means "to conceive and plan out in the mind" and "a basis for anticipating practical problems and solving them at the engineering stage." *Id.* at 611–612. A highway can be built entirely in accordance with a defective design. In the event of an injury following, it is the design which is the cause, not faulty construction or maintenance.

Thus, in my view, the legislature intended two entirely different causes of action when it used the phrases "dangerous condi-

tion" and "dangerous design". The 1985 amendment does no more than infer a cause of action for negligent, defective or dangerous design of a highway or road and provide an absolute defense to that cause of action under the specified circumstances. The majority's conclusion that a reference to highways and roads dangerously designed operates as a waiver of sovereign immunity for highways and roads in all circumstances is erroneous.

This does not end the inquiry, however. The question remains whether a downed stop sign constitutes a dangerous condition of property within the meaning of Section 537.600. The majority opinion intimates that "property" as used in Section 537.600.-1(2) would mean only buildings and appurtenances in the absence of the 1985 amendment. I can find no support for that proposition in the plain language of the statute. Even strictly construing the statute, the term "property" necessarily includes those things "which may be owned or possessed." Webster's Third New International Dictionary 1818 (1966).

Once it is found that highways and roads and the control devices which there attend are property for purposes of Section 537.-600.1(2), it remains to be determined whether a cause of action is pled here under the statute. In plain language, the legislature requires that the dangerous condition *directly* cause the plaintiff's damage. Strictly construing this language, I cannot conclude that a fallen stop sign is a *direct* cause of this accident. Direct cause contemplates that plaintff's damage is "directly traceable" to the fallen stop sign. Prosser & Keeton, The Law on Torts, 5th Ed. 293 (1984). Direct cause is thus "the active, efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source." *Anderson v. Steinle*, 289 Ill.App. 167, 6 N.E.2d 879, 881 (1937). For example, and assuming all oth-

er requirements of Section 537.600.1(2) are met, had plaintiff fallen over the fallen stop sign, a cause of action would exist here; the stop sign would be a direct cause of the damage.

In this case, factors aside from the fallen stop sign caused the accident. Here the plaintiff failed to operate his vehicle in a careful and prudent manner as required by Section 304.010, RSMo 1986, and failed to yield the right-of-way at the intersection as required by Section 304.351, RSMo 1986.[1] It was plaintiff's breach of this duty, his failure to follow the rules of traffic safety, which was the direct cause of his injury. Cf. *Putt v. Daussat*, 381 So.2d 955 (La. App.1980).

The majority relies on decisions of other jurisdictions for support despite the admission that no other jurisdiction relies on a statute "worded as ours is worded." (At 52). As is the case with the 1985 amendment, the differences in statutory language render these foreign cases unpersuasive. The Colorado Governmental Immunity Act specifically defined a dangerous condition as one "which interferes with the movement of traffic." In *Stephen v. City and County of Denver*, 659 P.2d 666, 667 (Colo. banc 1983), the Colorado Supreme Court held that a stop sign was a necessary traffic regulating device. The improper placement of a stop sign thus fell within the statutory definition of a "dangerous condition", and the government was liable. *Id.* at 668.

In *Fretwell v. Chaffin*, 652 S.W.2d 755 (Tenn.1983), a Tennessee statute removed the government's shield of immunity for "any injury caused by a defective, unsafe or dangerous condition of any street ... or highway." The Tennessee Supreme Court found a stop sign included in the definition of road conditions for which the government was liable. The Court noted that the legislature had removed any doubt as to the treatment of traffic control devices by

---

1. According to plaintiff's Statement of Facts, he was travelling northbound and collided at the intersection with a vehicle which was travelling westbound. Thus, the car with which plaintiff collided entered the intersection from plaintiff's

right. Section 304.351.2 states: "When two vehicles enter an intersection ... at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right...."

expressly providing that such devices were included within the terms "street" and "highway." *Id.*

In *Brown v. State Highway Commission*, 202 Kan. 1, 444 P.2d 882 (Kan.1968), the Kansas Supreme Court found a stop sign obstructed from view to be a highway defect. The court detailed the numerous statutory requirements followed by the state highway commission in maintaining traffic control devices and held that the commission had an absolute duty to conform to the statutory requirements and specifically, to place and maintain a stop sign at the intersection in question. On this basis, the Court held the government liable.

Our statute waiving sovereign immunity is unique. It imposes on plaintiffs the burden of showing that a dangerous condition *directly* caused the injury of which plaintiff complains. This case fails to present the direct causation required. Absent the direct causation mandated as a condition of the waiver of sovereign immunity by the statute, plaintiff has not stated a cause of action. The trial court did not err in dismissing plaintiff's petition.