Edgar KRAUS, et al., Appellants,

v.

HY–VEE, INC., et al., Respondents.

No. WD 63596.

Missouri Court of Appeals, Western District.

Nov. 9, 2004.

John W. Rourke, Nicholas B. Carter, St. Louis, MO, for appellant.

Terry M. Evans, Smithville, MO, for respondent, Hy–Vee, Inc.

Jeffrey O. Parshall, Susan F. Robertson, Columbia, MO, for respondent, Hy–Vee Construction.

Zachary T. Cartwright, Jr., Jefferson City, MO, for respondent, Missouri Highway & Transportation Commission.

Derrick A. Pearce, Overland Park, KS, for respondent, Transystems Corporation.

Before: THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Presiding Judge.

This appeal stems from an automobile collision at an intersection in Columbia, Missouri. The survivors of a woman killed in that collision have asserted claims against multiple parties for wrongful death and professional negligence. They contend that the state highway and transportation commission, the owner of a nearby grocery store, the company that built the grocery store, and the company that conducted a traffic impact study of the intersection are liable for failing to install electric traffic lights at the intersection and for failing to properly re-stripe the road at the intersection. The survivors also contend that the company that conducted the traffic impact study is liable for professional negligence in producing a faulty study that the other defendants relied upon in deciding not to install electric traffic lights.

Broadly speaking, this appeal involves two questions. First, have the survivors alleged facts sufficient to show that the state waived its sovereign immunity? And second, have the survivors' alleged facts sufficient to show that the remaining defendants had a duty as a matter of law, such that they could be liable for negligence in this case?

We conclude that the survivors have alleged sufficient facts to show that the state waived its sovereign immunity under the so-called "dangerous condition exception." We further conclude that the survivors have alleged facts sufficient to show that the company that conducted the traffic impact study had a duty in this case.

However, the survivors have not alleged facts sufficient to show that the grocery store owner or the company that constructed the store have any potential liability.

## I. Factual and Procedural Background

Ms. Mildred Kraus died on August 24, 2001, when the car that she was driving along Broadfield Drive in Columbia collided with another car at the intersection of Broadway Street. Hy–Vee Weitz Construction, L.C. (Hy–Vee Weitz) had recently built a new grocery store for Hy–Vee, Inc. (Hy–Vee) at the intersection. Before the collision, Transystems Corporation (Transystems) had prepared a traffic impact study to determine whether an upgraded traffic control device should be installed at the intersection in place of the existing stop sign in Ms. Kraus' lane of travel. At the time of the collision, the device had not been installed.

After Ms. Kraus died, her survivors brought an action against the state of Missouri, the Missouri Department of Transportation (MODOT), Hy–Vee, Hy–Vee Weitz, and Transystems. Count one of the petition alleged that all of the defendants were liable for the wrongful death of Ms. Kraus. Count two alleged that defendant Transystems was liable for professional negligence in carrying out the traffic impact study. The petition specifically alleged that Hy–Vee, Hy–Vee Weitz, and the State had "conducted studies to determine whether a traffic light was needed to control the intersection" and that these defendants "knew or should have known that the intersection, due to the volume of traffic, was dangerous in that it had no electric traffic signals for the control of traffic, due to the high volume of traffic generated by the opening of a Hy–Vee Store." The petition further alleged that these defendants "negligently decided not to install or

require the installation of an electric traffic control device."

In the professional negligence count, the petition alleged that Transystems "owed to Plaintiffs a duty to exercise a reasonable standard of care, whereby [Transystems] knew or should have known that the intersection ... due to the high volume of traffic generated by the construction and opening of the Hy–Vee store ... required electric traffic signals for the controls of traffic." The petition further alleged that Transystems breached its duty of care by "negligently providing an incorrect Traffic Impact Study, which it knew Defendants would rely upon."

The survivors later filed a first amended petition, dismissing the State of Missouri and MODOT as parties and substituting the Missouri Highways and Transportation Commission (MHTC) as a proper party. The survivors also filed a motion requesting leave of the court to file a second amended petition. Aside from correcting an error in the name of one of the intersecting streets, the second amended petition made no substantive changes. The record does not indicate whether the trial court granted leave to file the second amended petition.

In the meantime, however, MHTC had filed a motion to dismiss the first amended petition. MHTC argued that the survivors had failed to allege all of the elements necessary for waiver of sovereign immunity, including facts constituting a dangerous condition in public property or that Ms. Kraus' death resulted from such a condition. Transystems likewise had filed a motion for judgment on the pleadings, arguing that Transystems had no duty to plaintiffs as a matter of law because any duty in the case rested exclusively with the government. The trial court sustained both motions and gave the survivors ten days to file an amended petition.

The survivors subsequently filed a motion for leave to file their third amended petition as to all of the defendants, including MHTC and Transystems. The trial court granted the motion "as to and against all of the Defendants named in the lawsuit," including MHTC and Transystems.

The allegations contained in the third amended petition were more detailed than those contained in the preceding ones. By way of general allegations, the third amended petition now alleged that MHTC, Hy–Vee, and Hy–Vee Weitz "conducted studies through Transystems Corporation to determine whether a traffic light was needed to control the intersection ... whether the speed limit was appropriate, and whether other changes needed to be made to ensure the safety of motorist [sic]." And it alleged that all of the defendants "knew or should have known that the intersection, due to the volume of traffic, was dangerous in that it had no electric traffic signals for the control of traffic, due to the high volume of traffic generated by the opening of the Hy–Vee Store."

It also alleged that MHTC, Hy–Vee, and Hy–Vee Weitz "negligently decided not to install or require the installation of an electric traffic control device" at the intersection "based in part on the findings and recommendations of Transystems." The petition also alleged that Transystems should have informed the other defendants that a traffic control device was needed at the intersection.

In the wrongful death count, the third amended petition alleged that all of the defendants "had a duty to protect members of the public and more particularly Plaintiffs' decedent from the dangers of the intersection." The petition further alleged that all of the defendants breached that duty "by failing to install a traffic

control device at the intersection, ... by failing to properly restripe the road and intersection or to reduce the speed of traffic at said intersection all of which created a dangerous condition." And the petition alleged that MHTC, Hy–Vee, and Hy–Vee Weitz had actual notice of a dangerous condition in the intersection because they had received numerous complaints from the public about the lack of electric signals, confusing road striping at the intersection, and the high rate of speed at which cars passed through the intersection, "all of which said citizens felt made the intersection dangerous and that they feared for their safety and well being at said intersection."

The petition further alleged that car crashes at or near the intersection increased six-hundred percent "from the year prior to the construction of the Hy–Vee Store." The petition further alleged that all of the defendants knew or should have known that the traffic impact study was "incorrect and vague in that due to the volume of traffic at [the intersection] it warranted immediate placement of an electric traffic signal according to [MHTC's] own standards and design manual existing at that time." The petition further alleged that "based upon the volume and flow of traffic the speed limit at said intersection should have been reduced."

As to MHTC specifically, the petition also alleged that MHTC had disregarded its own standards and design manual when it did not immediately place an electric signal at the intersection based upon traffic volume cited in the traffic impact study of Transystems, "thereby breaching a duty to the public and more particularly plaintiffs' decedent."

In the revised professional negligence count, the third amended petition alleged that Transystems normally used certain manuals in preparing traffic impact studies and that Transystems failed to follow the manuals that it normally used when it prepared the traffic impact study in this case. The petition further alleged that Transystems "failed to recommend the immediate installation of an electric signal at the intersection ... when [MHTC's] design manual mandated it due to the volume of traffic." The petition alleged that Transystems "owed to Plaintiffs a duty to exercise a reasonable standard of care, such as following the guidelines in said manuals, whereby [Transystems] knew or should have known that the intersection ... due to the high volume of traffic generated by the construction and opening of the Hy–Vee store ... required electric traffic signals for the controls [sic] of traffic." And the petition alleged that Transystems "breached its duty of care to Plaintiffs by negligently providing an incorrect and vague Traffic Impact Study, which it knew Defendants would rely upon." It also alleged that "[a]s a direct and proximate result of Defendant Transystems Corporation's negligence, Defendants did not install an electric traffic control device."

After the survivors filed the third amended petition, Transystems again moved for judgment on the pleadings, and again argued that it had no duty to plaintiffs as a matter of law because any duty in the case rested exclusively with the government. Hy–Vee Weitz filed a separate "motion to dismiss and/or motion for judgment on the pleadings" in which it incorporated by reference Transystems' motion. The trial court sustained Transystems' and Hy–Vee Weitz's motions for judgment on the pleadings.

Hy–Vee likewise filed a "motion for judgment on the pleadings and/or motion to dismiss." Hy–Vee argued that it had no duty as a matter of law because any duty rested exclusively with the government. Hy–Vee also incorporated by reference the

separate motions of Transystems, Hy–Vee Weitz, and MHTC. The trial court sustained Hy–Vee's motion.

MHTC filed a motion to dismiss the third amended petition, again arguing that the survivors had failed to allege all of the elements necessary for waiver of sovereign immunity, including facts constituting a dangerous condition in public property or that Ms. Kraus' death resulted from such a condition. In the alternative, MHTC also moved the court to order the family to make more definite and certain the allegations about "confusing striping" at the intersection. Specifically, MHTC asked the court to order the survivors to "identify the striping that they claimed to have been confusing, and state which driver was allegedly confused and how any such confusion contributed to cause the subject accident." The trial court sustained MHTC's motion to dismiss too. The survivors appealed the granting of the defendants' motions.

## II. LEGAL ANALYSIS

### A. DISMISSAL OF THE CLAIM AGAINST MHTC

#### 1. MHTC's Motion to Dismiss Was Not Transformed into a Motion for Summary Judgment

Although MHTC filed a motion to dismiss appellants' third amended petition, MHTC argues that its motion was converted into a motion for summary judgment when MHTC filed an affidavit in support of its motion. Rule 55.27(a) contemplates such a conversion in certain circumstances.[1]

Those circumstances do not exist here, however. Although MHTC submitted one affidavit outside of the pleadings in support of its motion, appellants did not respond in kind. Appellants limited their response to the pleadings. Likewise, neither party submitted or referred to any evidence beyond the pleadings at the hearing on MHTC's motion to dismiss. It does not appear that the trial court relied upon the affidavit as grounds for dismissing the claim against MHTC. Equally important, the record does not show that appellants had notice that the court intended to treat MHTC's motion to dismiss as a motion for summary judgment. *See Turner Eng'g, Inc. v. 149/155 Weldon Parkway, L.L.C.,* 40 S.W.3d 406, 409 (Mo.App. E.D.2001) ("A trial court's order will constitute a dismissal, and not a summary judgment, where the record contains no evidence that the court notified the parties that it intended to review the pleadings and documents as a summary judgment motion, nor that the court considered matters outside the pleadings.") (internal quotation marks and citation omitted).

As a result, we conclude that MHTC's motion to dismiss was not converted into a motion for summary judgment. *Cf. Weems v. Montgomery,* 126 S.W.3d 479, 483 (Mo.App. W.D.2004) (even if trial court relied upon some evidence outside of the pleadings as grounds for dismissing claim, motions to dismiss were not automatically transformed into motions for summary judgment where party opposing motions did not submit any evidence beyond the pleadings, where party opposing motions

---

1. In pertinent part, the rule says: "If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 74.04." Rule 55.27(a). Unless otherwise indicated, all rules refer to Missouri Court Rules (2004).

objected to the submission of such evidence, and where party opposing motions lacked notice that the circuit court intended to treat motions to dismiss as summary judgment motions).

## 2. Standard of Review

Accordingly, we review the dismissal of appellants' claim against MHTC under the standard that governs motions to dismiss. We review the grant of a motion to dismiss *de novo*, examining the pleadings to determine whether they invoke principles of substantive law. *Id.* at 484. "The pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader." *Id.* (internal quotation marks and citation omitted). "In making our determination, we may not address the merits of the case or consider evidence outside of the pleadings." *Id.* (internal quotation marks and citation omitted).

We now consider whether appellants have stated a claim for relief against MHTC.

## 3. Appellants Have Alleged Facts Showing that MHTC Waived its Sovereign Immunity Under the Dangerous Condition Exception

Under the doctrine of sovereign immunity, public entities are immune from suit for their negligent acts unless the General Assembly has expressly waived such immunity. § 537.600.1. The General Assembly has expressly waived such immunity in two circumstances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

§ 537.600.1(1) and (2).

In shorthand, these exceptions are known respectively as the "motor vehicle exception" and the "dangerous condition exception." *Hale ex rel. Hale v. City of Jefferson,* 6 S.W.3d 187, 192–93 (Mo.App. W.D.1999). This case concerns the dangerous condition exception. Appellants contend that MHTC created such a dangerous condition by failing to install traffic lights at the intersection and by failing to properly re-stripe the intersection.

■ To state a claim under the dangerous condition exception, a claimant must allege facts showing "1) a dangerous condition of public property, 2) that the injury directly resulted from the dangerous condition, 3) that the dangerous condition created a reasonably foreseeable risk of the kind of harm incurred, and 4) that a public employee negligently created the condition, or the public entity had actual or constructive notice of the condition." *State ex rel. Mo. Highway and Transp. Comm'n v. Dierker,* 961 S.W.2d 58, 60 (Mo. banc 1998). Appellants and MHTC dispute whether appellants alleged facts to support the first and second elements under the dangerous condition exception.

We conclude that appellants have alleged facts sufficient to invoke this exception.

### a. Appellants Alleged Facts Showing a Dangerous Condition of Public Property

■ The first question is "whether the highway conditions and circumstances described in the petition were as a matter of law not a 'dangerous condition of (the Missouri Highway and Transportation Commission's) property.'" *Cole v. Mo. Highway & Transp. Comm'n,* 770 S.W.2d 296, 297 (Mo.App. W.D.1989). Generally, a condition is dangerous where "its existence, without intervention by third parties, posed a physical threat to plaintiff." *Alexander v. State,* 756 S.W.2d 539, 542 (Mo. banc 1988).

■ What constitutes a dangerous condition of public property has evolved. *See Uptergrove v. Housing Auth. of Lawson,* 935 S.W.2d 649, 653–54 (Mo.App. W.D. 1996). A dangerous condition of public property originally existed as a matter of law only when there was a "defect in the physical condition of public property." *See Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985). A dangerous condition now exists as a matter of law when there is a "physical deficiency" in such property, apart from any inherent defect in the physical condition of the property itself. *Alexander,* 756 S.W.2d at 542 (placement of folding room partition against ladder created physical deficiency in State's property that constituted a dangerous condition of public property). *See also State ex rel. City of Marston v. Mann,* 921 S.W.2d 100, 102 (Mo. App. S.D.1996) ("In the second line of cases, Missouri courts began relaxing the physical defect standard holding that the physical deficiency in a public entity's property could constitute a dangerous condition if the dangerous condition was created by positioning various objects on the property and not by intrinsic defects in the property."). This does not include those conditions caused by misuse or other intervening acts, however. *Id.* at 103. *See also,* Jeffrey A. Burns, 2A Missouri Practice, Methods of Practice Litigation Guide (4th ed.2002) § 29.5 at 151 ("The concept of dangerous condition does not include property which is not itself physically defective, but may be the site of injuries and the result of misuse or other intervening act.").

■ A dangerous condition of public property also exists as a matter of law when there is "negligent, defective, or dangerous design of a highway or road." *Wilkes v. Mo. Highway & Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988). "Signs and traffic controls can be a part of negligent, defective, or dangerous maintenance and design of state roads and highways." *United Mo. Bank v. City of Grandview,* 105 S.W.3d 890, 902 (Mo.App. W.D.2003) (quoting *Linton v. Mo. Highway & Transp. Comm'n,* 980 S.W.2d 4, 9 (Mo.App. E.D.1998)). "Accordingly, a dangerous condition of public property may arise from a general failure to post adequate signing or traffic controls." *Id.*

The Missouri Supreme Court has recognized the importance of traffic control devices in this context and said:

> We believe the primary purposes in the design of roads and highways are (1) expediting the flow of traffic, and (2) safety. Traffic control and control devices are an integral part of expediting traffic flow and attaining safety, and design, of necessity is a continuing process which encompasses such things as widening, changing of grades, resurfacing, and installation of lights and traffic controls. We are compelled to hold that this traffic control device was contemplated within the clear unambiguous

meaning of the words used in the amendment [to the sovereign immunity statute].

*Donahue v. City of St. Louis,* 758 S.W.2d 50, 52 (Mo. banc 1988).

Under this exception, the government can be liable for failing to maintain existing traffic control devices and road signs. *See id.* at 50, 53 (petition adequately alleged a dangerous condition of public property where it alleged that the stop sign on a city street was down and was not visible to motorists entering the intersection from the direction in which the plaintiff was traveling); *Fox v. City of St. Louis,* 823 S.W.2d 22, 23–24 & n. 1 (Mo.App. E.D. 1991) (petition adequately alleged that accident resulted from dangerous condition in that stop sign was not in place and city failed to repair, remedy, or warn of condition).

But the government also can be liable for the "general failure to post adequate signing." *Linton,* 980 S.W.2d at 7 (allegations against MHTC for negligent design and inadequate signing for a left-side exit). *See also Wilkes,* 762 S.W.2d at 28 (petition alleged, among other things, that MHTC was negligent in failing to warn of danger of ice on bridge or to reduce speed when approaching the bridge); *United Mo. Bank,* 105 S.W.3d at 894, 903 (no entitlement to summary judgment on ground that conservator could not establish dangerous condition of property as a matter of law where conservator of estate alleged, among other things, that city was negligent for failing to properly warn approaching traffic of dangerous intersection, failing to post reduced speed limit signs, and allowing exit to be constructed without a stop sign for drivers exiting parking lot and without a stop line telling drivers where to stop due to limited sight distance); *Nagy v. Mo. Highway & Transp. Comm'n,* 829 S.W.2d 648, 652 (Mo.App.

E.D.1992) (failure to adequately warn motorist of "what was essentially a new intersection"); *Cole,* 770 S.W.2d at 297 (petition alleged that MHTC " 'failed to warn and to properly warn through proper signing and road marking and through other appropriate steps of the obscured and sudden curvature' " in the road).

Although the allegations in this case likewise involve the failure to post adequate signing and traffic controls, MHTC argues that our decision in *Hedayati v. Helton* compels the dismissal of the claim against it in this case. *See* 860 S.W.2d 795 (Mo.App. W.D.1993). We disagree.

The wrongful death claimant in *Hedayati* alleged that the road "was in a dangerous condition because there were no traffic control devices on Providence Road and there were no signs or other traffic control devices on the [intersecting] private road warning persons of the danger of crossing Providence Road." *Id.* at 796. He also alleged that "people commonly crossed from one side of Providence to the other at the point where the private road entered Providence Road." *Id.* This court concluded that the allegations were insufficient to show that the intersection was in a dangerous condition and that the decedent's death directly resulted from such dangerous condition. *Id.* at 797. The court said:

It will first be noted that the petition does not contain any allegation of any physical defect in either road. The only defect alleged is the absence of traffic control devices and a sign warning persons of the danger of crossing Providence Road.... The dangerous condition alleged in this case, as in *Johnson* [*v. City of Springfield,* 817 S.W.2d 611 (Mo.App. S.D.1991)], related only to the volume of pedestrian and vehicle traffic. Under *Alexander,* the petition must allege facts which show that the condition of the public entity's property "was dan-

gerous because [of] its existence, without intervention by third parties." There is no allegation in the petition in this case which pleads facts to show that Providence Road and the private road were in a dangerous condition because of their very existence which posed a physical threat to [the decedent].

*Id.* at 796–97 (internal citation omitted).

*Hedayati* in turn relied upon the southern district's decision in *Johnson,* 817 S.W.2d 611. The claimants in *Johnson* alleged that a city street was in an unreasonably dangerous condition as follows:

(a) it had a high volume of vehicle and pedestrian traffic, (b) vehicles parked along the street blocked motorists' view of children and children's view of vehicles, and when children walked from behind parked vehicles into [the road] motorists traveling at the posted 30 m.p.h. speed limit could not stop in time to avoid striking them, (c) many children played in the area, (d) [the pedestrian claimant] was not warned of the dangerous condition of the street, (e) motorists were not warned to reduce speed, (f) parked vehicles prevented motorists from keeping a careful lookout, (g) motorists were not warned of children playing in the area, and (h) a safe speed limit was not posted.

*Id.* at 612.

The southern district found these allegations insufficient to state a claim for relief under the dangerous condition exception and said:

The plaintiffs argue that East Avenue was in as dangerous a condition as the bridge in *Wilkes,* the sudden and obscured curve and intersection in *Cole,* and the shoulder of the road in *Brown* [*v. Missouri Highway & Transportation Commission,* 805 S.W.2d 274 (Mo.App. W.D.1991)]. Argument notwithstanding, we do not find in the petition factual allegations that the portion of East Avenue in question suffered from the "negligent, defective, or dangerous design" as pled in *Wilkes, Cole,* and *Brown.* Borrowing from *Alexander,* we believe the very existence of the road conditions alleged in *Wilkes, Cole,* and *Brown,* if true, posed a physical threat to the plaintiffs in those cases. We do not believe the alleged conditions of East Avenue, standing alone, posed a physical threat to the injured plaintiff in the case before us.

*Id.* at 615.

*Hedayati* may have painted with too broad a brush to the extent that it suggested that an allegation of negligent, defective or dangerous road design never can arise out of traffic flow and volume. As the Missouri Supreme Court specifically recognized in *Donahue,* "the primary purposes in the design of roads and highways are (1) expediting the flow of traffic, and (2) safety. Traffic control and control devices are an integral part of expediting traffic flow and attaining safety, and design, of necessity, is a continuing process which encompasses such things as widening, changing of grades, resurfacing, and installation of lights and traffic controls." 758 S.W.2d at 52.

In any event, we also believe that the facts alleged in *Hedayati* and *Johnson* differ from the facts alleged in this case. The petition in *Johnson* alleged that the dangerous condition was caused not just by the volume of traffic but also by motorists who parked their cars along the street, thereby blocking the view of other motorists and pedestrians. 817 S.W.2d at 612. The dangerous condition in *Johnson,* therefore, was not one whose "existence, without intervention by third parties, posed a physical threat to plaintiff." *Id.* at 614 (quoting *Alexander,* 756 S.W.2d at 542). To the contrary, the dangerous con-

dition in *Johnson* was one whose existence depended upon the intervention of third parties—motorists parking their cars—to make it dangerous. *See id.* at 615 ("We do not believe the alleged conditions of East Avenue, standing alone, posed a physical threat to the injured plaintiff in the case before us.").

■ Unlike the petitions in both *Hedayati* and *Johnson,* the petition in this case also alleges that MHTC disregarded its own standards and design manual by failing to install an electric traffic light at the intersection. *Cf. Linton,* 980 S.W.2d at 7 ("In the instant case, there was sufficient evidence to find a dangerous condition under *Donahue* and its progeny. Respondents' expert testified the signs and directions placed on the highway were inadequate because they did not follow the directives of the Manual on Uniform Traffic Control Devices.").

Moreover, the petition in this case alleges not only that the dangerous condition of public property arose from MHTC's failure to post adequate traffic controls, but that the dangerous condition also arose from a physical deficiency in the road: the confusing striping. The petition alleges that the striping on the road at the intersection confused motorists and that MHTC had actual notice of the condition. This allegation is distinct from appellants' traffic flow allegations and was not present in either *Hedayati* or *Johnson.*

Construing all of the allegations liberally and in the light most favorable to appellants, we therefore conclude that appellants have alleged facts showing a dangerous condition of public property.

**b. Appellants Alleged Facts Showing that the Decedent's Death Directly Resulted from the Dangerous Condition of Public Property**

The second question here is whether appellants alleged facts showing that Mildred Kraus' death "directly resulted from" this dangerous condition. In its motion to dismiss appellants' third amended petition, MHTC argued that appellants failed to do so.

"The phrase 'directly resulted from' in section 537.600.1(2) is synonymous with 'proximate cause.'" *Dierker,* 961 S.W.2d at 60. "Proximate cause requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage." *Id.* (quoting *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 865 (Mo. banc 1993)).

■ "The practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence." *Id.* (quoting *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710 (Mo. banc 1990)). "'To the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions.'" *Id.* at 61 (quoting *Callahan,* 863 S.W.2d at 865)). "The trier of fact normally decides causation, especially where reasonable minds could differ as to causation on the facts of the case." *Williams v. Mo. Highway & Transp. Comm'n,* 16 S.W.3d 605, 611 (Mo.App. W.D.2000) (internal citation omitted).

■ The petition in this case alleges that MHTC's negligence directly and proximately caused the "motor vehicle driven by Jeremiah Holt ... to collide with Mildred Kraus, causing severe and extensive trauma to Mildred Kraus, eventually resulting in her death." Although MHTC's

argument is not very clear, MHTC seems to contend that Ms. Kraus' death directly resulted from her own negligence, rather than any dangerous condition at the intersection. MHTC points to Ms. Kraus' supposedly-poor eyesight as evidence that her own negligence was the proximate cause of the accident.

There are two problems with MHTC's argument. First, evidence about Ms. Kraus' eyesight is beyond the scope of the pleadings and, therefore, cannot be considered in determining whether appellants have stated a claim upon which relief can be granted. Second, the existence of concurring negligence on Ms. Kraus' part would not bar recovery in any event; it would merely require the fact-finder to apportion fault between or among the responsible parties. *Linton,* 980 S.W.2d at 7 (no error in overruling MHTC's motion to dismiss on ground that motorists' deaths did not directly result from dangerous condition of property where evidence at trial showed that motorists had elevated blood alcohol levels).

Accordingly, we also conclude that appellants have alleged facts showing that Ms. Kraus' death directly resulted from the dangerous condition of public property.[2] The trial court, therefore, erred in dismissing appellants' claim against MHTC. The case against MHTC is remanded for further proceedings.

## B. JUDGMENT ON THE PLEADINGS FOR HY-VEE, HY-VEE WEITZ, AND TRANSYSTEMS

To resolve appellants' remaining points against Hy–Vee, Hy–Vee Weitz, and Transystems, we must consider the element of duty. In each instance, appellants allege—and the three respondents deny— the existence of this element of negligence. Duty is the only element of negligence that we determine as a matter of law. *Bowan v. Express Med. Transporters, Inc.,* 135 S.W.3d 452, 457 (Mo.App. E.D.2004). "A duty to exercise care can be imposed by a controlling statute or ordinance, assumed by contract, or imposed by common law under the circumstances of a given case." *Id.* This court's eastern district recently surveyed the broad principles for considering duty and said:

> When considering if a duty exists in a particular case, we look at several policy factors, including the following: (1) whether society finds the interest is worthy of protection; (2) the foreseeability of harm and degree of certainty that the protected person suffered injury; (3) the moral blame society places on the conduct; (4) the prevention of future harm; (5) the costs and ability to spread the risk of loss; and (6) the economic burden on the actor and community. When considering if a duty is owed, we look for a relationship between the plaintiff and the defendant that the law recognizes as the basis of the duty of care. We look to the body of statutes, rules, principles and precedents which make up the law when determining whether this relationship exists.

*Id.* (internal quotation marks and citations omitted).

A party can assume a duty. *Id.* "If a defendant assumes a duty, by contract or by conduct, he can be held liable

---

**2.** Because the trial court's order sustaining MHTC's motion to dismiss did not specify the grounds for so doing, we presume that the court based its decision on the grounds specified in the motion. *Pippins v. City of St. Louis,* 823 S.W.2d 131, 133 (Mo.App. E.D. 1992). And the only grounds specified in MHTC's motion were the ones already addressed here. We therefore presume that MHTC does not dispute that appellants have alleged facts sufficient to support the remaining elements under the "dangerous condition exception."

for injuries caused by the unsafe performance of that assumed duty." *Id.* However, a defendant's liability is no broader than the duty assumed. *Teichman v. Potashnick Constr., Inc.*, 446 S.W.2d 393, 400 (Mo. banc 1969). Against the backdrop of these principles, we now consider the claims against the remaining parties.

### 1. Standard of Review for Judgment on the Pleadings

When we review a grant of judgment on the pleadings, we examine the allegations of the petition to determine whether the pleaded facts are insufficient as a matter of law. *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 134 (Mo. banc 2000). "The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well pleaded facts in the opposing party's pleadings." *Id.* (internal quotation marks and citation omitted). "The position of a party moving for judgment on the pleadings is similar to that of a movant on a motion to dismiss; i.e., assuming the facts pleaded by the opposite party to be true, these facts are, nevertheless, insufficient as a matter of law." *Id.* (internal quotation marks and citation omitted). If the pleadings from their face demonstrate that the moving party is entitled to judgment as a matter of law, then the trial court is justified in granting a motion for judgment on the pleadings. *Id.*

### 2. Analysis of Judgment on the Pleadings for Hy–Vee

#### a. General Rule

■■■ Appellants allege that Hy–Vee was negligent in failing to install electric traffic lights at the intersection and in failing to properly re-stripe the road. As an abutting property owner, Hy–Vee generally has no duty to install traffic lights or to stripe the road because those duties fall to government, not to adjacent property owners. *See, e.g., Caldwell v. McGahan*, 894 S.W.2d 237, 238 (Mo.App. E.D.1995) ("[T]his duty rests with the municipality, not adjacent property owners, and it is nondelegable.").

#### b. Exceptions to General Rule

##### 1.) Special Use of the Road

■■■ Two exceptions to the general rule exist, however. The first exception is the "special use" exception. Under this exception, Hy–Vee could have a duty if it used the road for some purpose other than merely using it as a road or if it put an obstruction in the road that was not a part of the original construction in order to serve its own purposes. *Id.* at 238–39. The petition does not allege that Hy–Vee used the road for any reason other than its intended purpose or that it put any obstruction in the road. *Cf. Cohen v. W. County Motor Co.*, 877 S.W.2d 143, 144–46 (Mo.App. E.D.1994) (where street separated two parts of car dealership and customer died while crossing street from one part to the other, dealership had no general duty to maintain street in safe condition and special use exception did not apply because record contained no evidence that dealership used street for any purpose other than ingress and egress from its business); *Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d 880, 883 (Mo.App. E.D. 1993) (special use exception "does not apply to using the sidewalk as is, as an ingress or egress to an owner's property."). From the petition we can determine only that Hy–Vee opened a store adjacent to the road, which customers used to go to and from the store. Accordingly, we conclude that this exception does not apply here.

##### 2.) Affirmative Creation of a Dangerous Condition

The second exception exists when the abutting property owner creates a danger-

ous condition on the road. Under this exception, Hy–Vee could have a duty if it artificially created—through negligence or affirmative action—a condition on the road that makes passage unsafe. *Caldwell*, 894 S.W.2d at 239. This dangerous condition would have to arise from Hy–Vee's affirmative actions and not its omissions, however. *Id.*

■ Given this exception, we disagree with Hy–Vee's broad proposition that the government's non-delegable duty to maintain the road absolutely precludes liability as to any other party. That the government has a non-delegable duty to maintain the road does not preclude liability as to others who have assumed such a duty as well. *Benedict v. N. Pipeline Constr.*, 44 S.W.3d 410, 428 (Mo.App. W.D.2001). "One may render himself liable for the safety of a highway or sidewalk by the voluntary construction of improvements, the performance of work, of the assumption of some duty with respect to the maintenance or repair of the way." *Id.* (internal quotation marks and citations omitted). Such liability is only as broad as the duty assumed, however. *Teichman*, 446 S.W.2d at 400.

■ Although we disagree with Hy–Vee's broad proposition that it never can assume a duty to maintain the road, we nonetheless agree with Hy–Vee that appellants' have not stated a claim for relief in this case. Appellants allege that Hy–Vee requested a traffic impact study to determine whether the intersection needed a traffic control device. But it does not follow that Hy–Vee assumed any duty to implement the findings from that study, whatever those findings were. Appellants do not allege any affirmative action by Hy–Vee that artificially created a condition in the road such that passage became unsafe. At most, any dangerous condition would have resulted from an omission:

failing to implement the study's recommendations. Such omission cannot be the basis for liability under the second exception, however. *Caldwell*, 894 S.W.2d at 239. *See also* 40 C.J.S. *Highways* § 256 (1991) ("The abutter is under an obligation to use reasonable care to keep his premises in such condition as not to create defects or obstructions in the adjacent highway endangering travelers in their lawful use of the road, and, if he fails to do so and thereby renders the highway unsafe for travel, he makes himself liable for resultant damage, and he is liable for an injury caused by a defect or obstruction created by him in the highway, including those originating on his own land.").

Appellants also allege that Hy–Vee— among others—"fail[ed] to properly re-stripe the road and intersection." Again, however, this allegation does not show that Hy–Vee assumed any duty to maintain the intersection. Premised as it is upon an omission, this allegation also cannot be the basis for liability under the second exception. *Caldwell*, 894 S.W.2d at 239.

Accordingly, we conclude that the trial court appropriately granted judgment on the pleadings to Hy–Vee.

### 3. Analysis of Judgment on the Pleadings for Hy–Vee Weitz

Appellants allege that Hy–Vee Weitz built the Hy–Vee store at the intersection of Broadway and Broadfield. Appellants do not otherwise explain the nature of the relationship between Hy–Vee and Hy–Vee Weitz. Appellants further allege that Hy–Vee Weitz had a duty to protect the public from the dangers of the intersection and that Hy–Vee Weitz breached its duty by failing to install an electric traffic light at the intersection and by failing to properly re-stripe the road.

Although Hy–Vee Weitz evidently does not own the store at the intersection of Broadway and Broadfield and is, therefore, not an abutting landowner, it still could be liable for "the voluntary construction of improvements, the performance of work, or the assumption of some duty with respect to the maintenance or repair of the way." *Benedict,* 44 S.W.3d at 428 (internal quotation marks and citations omitted). If Hy–Vee Weitz were an independent contractor for the abutting landowner, it also could be liable "for injuries to travelers resulting from [its] negligent performance of the work" in or near the street. 39 AM.JUR.2D *Highways, Streets, and Bridges* § 408 (1999).

 Having reviewed the allegations against Hy–Vee Weitz in light of these principles, we conclude that appellants likewise have failed to state a claim against Hy–Vee Weitz. Appellants allege that Hy–Vee Weitz built the store. Although appellants also allege that Hy–Vee Weitz was among those parties that "conducted studies through Transystems" to determine the need for a traffic light at the intersection, it does not follow that Hy–Vee Weitz had any affirmative duty to implement the findings of that study. As with Hy–Vee, appellants also allege that Hy–Vee Weitz failed to properly re-stripe the road. Again, however, this allegation does not show that Hy–Vee Weitz assumed any duty to maintain the intersection. It shows only that Hy–Vee failed to do something to maintain the intersection.

Accordingly, we also conclude that the trial court appropriately granted judgment on the pleadings to Hy–Vee Weitz.

### 4. Analysis of Judgment on the Pleadings for Transystems

Appellants allege that Transystems prepared a traffic impact study at the request of Hy–Vee to determine the necessity of a traffic control device at the intersection. Appellants allege that Transystems knew or should have known that the intersection was dangerous due to the volume of traffic because it had no electric traffic signals to control such traffic and that Transystems should have so informed the other defendants.

In their wrongful death count, appellants further allege that Transystems had a duty to protect the public—including Mildred Kraus—from the dangers at the intersection and that Transystems breached that duty by failing to install a traffic control device, failing to properly restripe the road, or failing to reduce the speed of traffic at the intersection. Appellants further allege that Transystems knew or should have known that the traffic impact study was incorrect and vague "in that due to the volume of traffic at Broadway and Broadfield it warranted immediate placement of an electric traffic signal according to [MHTC's] own standards and design manual existing at that time" and that the speed limit at the intersection should have been reduced.

In their professional negligence count, appellants allege that Transystems did not follow the manuals that it normally uses in preparing a traffic impact study and that Transystems failed to recommend the immediate installation of an electric signal at the intersection when MHTC's design manual mandated it due to the volume of traffic. Appellants allege that Transystems owed to them "a duty to exercise a reasonable standard of care, such as following the guidelines in said manuals, whereby [Transystems] knew or should have known" that the intersection required electric traffic signals due to the high volume of traffic associated with the opening of the Hy–Vee store. Appellants further allege that Transystems breached this duty by "negligently providing an incorrect

and vague Traffic Impact Study, which it knew Defendants would rely upon."

In their reply brief, appellants acknowledge that Transystems did not control the intersection, but argue that Transystems did have "control and influence over the data and analysis of that data in the traffic control study" that the other defendants relied upon.

Because the petition does not allege that Transystems did any work on or near the road itself, this case does not correspond to those cases where a party has rendered itself liable "for the safety of a highway ... by the voluntary construction of improvements, the performance of work, or the assumption of some duty with respect to the maintenance or repair of the way." *Benedict,* 44 S.W.3d at 428 (internal quotation marks and citations omitted).

Nor does it exactly correspond to those cases in which an independent contractor has rendered itself liable for work done on or near the road at the behest of the state. Even if one could infer from the petition that Transystems was acting as an independent contractor for MHTC and the other defendants in this case, the petition does not allege that Transystems did any work on or near the road. *Cf.* 39 Am. Jur.2d *Highways, Streets, and Bridges* § 407 (1999) ("[C]ontractors who have contracted with public authorities for the construction of highways, streets, and bridges, are liable to travelers for injuries proximately resulting from negligence in the performance of the work contracted for. In this regard, it has been said that a contractor constructing a road or bridge owes a duty to the public to exercise ordinary care to protect it from injuries arising by reason of such construction, and that a prime contract between the state and a highway construction contractor and a contract between the contractor and a subcontractor imposed a duty, aside from any common-law duty, upon the contractors to maintain proper traffic control for the safety of the public during the course of road repairs.").

But this case does correspond to those recognizing liability under section 324A of the Restatement (Second) of Torts,[3] where a party renders services to another, which that party should recognize as necessary for the protection of some third person:

> Judicially adopting a provision [section 324A] of the Restatement (Second) of Torts, which provides that one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if his failure to exercise reasonable care increases the risk of such harm, or he has undertaken to perform a duty owed by the other to the third person, or the harm is suffered because of reliance of the other or the third person upon the undertaking, the view has been followed by some courts that civil engineers who undertook to inspect bridges or to design traffic control systems owed a duty

---

3. It says: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

to the public to perform their tasks in a competent manner and could be held liable for a breach of this duty.

39 Am.Jur.2d *Highways, Streets, and Bridges* § 407 (1999).

That is certainly the gravamen of the allegations against Transystems: that it conducted a traffic study for MHTC and the other defendants; that the study was vague and incorrect; that Transystems failed to recommend the immediate installation of an electric traffic light; that the other defendants relied upon Transystems' professional advice in deciding not to install electric traffic lights; and that Ms. Kraus and her family were harmed as a result of this reliance upon Transystems' defective work.

Missouri courts have analyzed a party's duty under section 324A in other cases. *See, e.g., Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 287 (Mo.App. W.D.1995) ("Missouri courts have recognized that a duty may be assumed or undertaken, and when so assumed, a defendant must exercise reasonable care in carrying out the duty. Such a duty is reflected in the language of section 324A of the Restatement (Second) of Torts.") (citations omitted), *overruled on other grounds as stated in Richardson v. Quiktrip Corp.*, 81 S.W.3d 54, 62–63 n. 9 (Mo.App. W.D.2002); *Plank v. Union Elec. Co.*, 899 S.W.2d 129, 131–32 (Mo.App. E.D.1995) (holding that a valid cause of action under section 324A(b) requires showing of intent to become primary provider of service for the protection of a third person and recognizing that duty can arise under section 324A(a) where there is a showing of increased risk or section 324A(c), where there is a showing of reliance); *Brown v. Mich. Millers Mut. Ins. Co.*, 665 S.W.2d 630, 632–36 (Mo.App. W.D.1983) (recognizing potential for liability under both Restatement and common law principles).

■ Although Missouri courts evidently have not considered section 324A in the context presented here, the Kansas Supreme Court has applied section 324A in a somewhat similar case. *See Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982). In *Schmeck*, a motorcycle passenger suffered severe injuries after the motorcycle collided with a car that was making a left turn at an intersection. *Id.* at 588–89. The intersection did not have a left-turn signal. *Id.* at 589. Among other things, the evidence showed that the local power company had agreed to provide to the city traffic engineering services, including the design and installation of a traffic control system for the intersection and that the traffic control system had not yet been installed when the collision occurred. *Id.* at 590–91. The passenger alleged that the scope of the duty assumed by the power company included protecting her. *See id.* at 596.

The Kansas Supreme Court agreed. The court rejected the power company's first argument that "[i]ts only obligation was contractual and having contracted with the City, no duty was created for the benefit of the plaintiff." *Id.* Noting that this argument was one based on a third-party beneficiary concept, the court found it lacking because the passenger's action was a tort action, not a contract action, and therefore the arguments regarding third-party beneficiaries and privity were irrelevant. *Id.* at 596–97.

The court also rejected the power company's second argument that "a contractor owes no duty to the general public for legal nonfeasance or failure to act." *Id.* at 596. Because the traffic control system had not been installed at the time of the collision, the power company maintained that the action against it was based upon its failure to act, which was nonfeasance

and which did not create a duty. *Id.* at 597. The court said:

> Clearly [the passenger's] cause of action against KCPL is based on the active negligence of KCPL in undertaking the design of the traffic control system at the intersection ... and performing the job in a negligent manner. As such KCPL's alleged actions fall squarely within the definition of misfeasance.

*Id.*

And the court rejected the power company's third argument that any recovery had to be based on some sort of negligent breach of contract by KCPL. *Id.* at 596. The court said:

> Again, KCPL is misconstruing the cause of action brought by Schmeck by treating the case as if it were based upon the contractual relationship between KCPL and the City. Although KCPL and the City did have a contract, Schmeck did not attack it or allege it served as the basis for a duty owed to her. Rather, Schmeck alleged KCPL went beyond its contractual obligations and engaged in the business of providing services to the City as a traffic engineering consultant by agreeing to study the traffic signal needs at the intersection and to formulate a proposal for meeting the requirements of the State and MUTCD. Thus, KCPL assumed part of the City's duty to keep its streets reasonably safe for their intended use.

*Id.* at 597.

The court held that the principles embodied in section 324A had long been recognized in Kansas and that those principles applied to the passenger's case. *Id.* at 597–98. In doing so, the court disagreed with the power company that it could not be liable because it had not yet done the work: "KCPL was performing the planning of the intersection and, thus, *was* actually engaged in 'doing the work.' " *Id.* at 598.

We believe that appellants in this case have stated a claim for relief against Transystems under the principles embodied in section 324A(c). Accordingly, we hold that the trial court should not have granted judgment on the pleadings in favor of Transystems and reverse that portion of the trial court's judgment. The case against Transystems is remanded for further proceedings.

### III. CONCLUSION

Appellants have stated a claim for relief against MHTC under the dangerous condition exception to sovereign immunity. Appellants also have stated a claim against Transystems under principles embodied in section 324A(c) of the RESTATEMENT (SECOND) OF TORTS. But appellants have failed to state claims for relief against either Hy–Vee or Hy–Vee Weitz. The judgment of the trial court is affirmed in part and reversed in part and the cases against MHTC and Transystems are remanded for further proceedings.

HAROLD L. LOWENSTEIN and RONALD R. HOLLIGER, JJ., concur.