## WESTINGHOUSE ELECTRIC ELEVATOR CO. v. HATCHER et al.

### No. 10436.

Circuit Court of Appeals, Fifth Circuit.

Feb. 2, 1943.

Rehearing Denied March 12, 1943.

A. Allen Wight and Lucian Touchstone, both of Dallas, Tex., for appellant.

John White, W. B. Handley, Wm. M. Cramer, Harry P. Lawther, Hoyet A. Armstrong, Robert G. Payne, and Claude Williams, all of Dallas, Tex., for appellees.

Before SIBLEY and HUTCHESON, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Maxey M. Hatcher was seriously injured in an elevator operated by his employer, Whittle Music Company, hereafter called Music Company. Texas Employers Insurance Association, compensation insurer for the Music Company, intervened in this suit by Hatcher against Westinghouse Electric Elevator Company, appellant, for damages ex delicto. It is claimed that Hatcher's injuries were caused by the failure of the automatic safety device to stop the fall of the elevator when both cables broke at approximately the same time.

The Music Company and appellant had executed a contract, under which the latter bound itself "to furnish inspection services" for this passenger elevator, as well as another handling freight, in which appellant agreed to do certain things as follows:

"1. The Company will make Two (2) inspections per month of the apparatus including cleaning and lubricating of machines, motors, and controllers; oiling or greasing all bearings and guide rails. Necessary minor adjustments will be made at the time of inspection.

"This agreeement also includes the furnishing of oils, greases, waste and all cleaning materials. This agreement does include inspection or adjustment to hatchway or car enclosures, hatchway or car doors or gates, signal devices, interlocks and door mechanisms."

The elevator had been in service for many years, and it was the opinion of experts that breaking of the cables was caused by crystallization from long use. It had a safety device which contemplated that the centrifugal force, produced by an accelerated turning of the governor, would cause certain dogs to fly out and trip a trigger that brought into play other mechanisms to stop the fall of the elevator. A spring held these dogs in place during normal movement, but if it was pressed down too tight, this prevented the dogs from responding to the centrifugal force. It was shown that at the time of the accident there were several extra washers behind the spring and it is not seriously questioned that this accounted for the failure of the device to work and stop the fall of the elevator. The question, therefore, is one of fact as to who was responsible for having placed the extra washers behind the spring.

The case was tried to a jury, which found for the plaintiff in the sum of $21,000, but was reduced by remittitur, directed by the judge, to $17,500.

Appellant makes some eight assignments of error: (1) that the contract between it and the Music Company was inadmissible in evidence; (2) that it did not require the performance of the duty charged to have been omitted; (3) that if appellant was required to perform this service, it was as agent of the Music Company in discharging a nondelegable duty, for which appellant can not be held liable; (4) that if appellant was an independent contractor at the time of the accident, the work had been performed and accepted by the Music Company, which terminated appellant's liability; (5) that the court erred in admitting the testimony of certain witnesses who saw the alleged defective governor on the day after the accident, without first proving its condition was the same as when the accident happened; (6) that the evidence was insufficient to create more than a suspicion of appellant's negligence; (7) the failure of the lower court to sufficiently define the issues outlined by the pleadings; and (8) that other persons, made third parties defendant, having the responsibility of inspecting and repairing the elevator, had inspected and worked on it after that last performed by appellant—in other words, there was no substantial evidence to support the claim that the negligence of appellant caused the injury.

Howard Beasley, Jr., son of the president of the Music Company, swore that a representative of the appellant inspected the elevator on Saturday before it fell on Monday. Beasley, Sr., also testified that on Sunday, the intervening day, he and another rode in the elevator, which was apparently working satisfactorily, but that just a few days earlier it had been making a knocking noise. This witness described the noise which he had heard as a "knock between one and two times a second, or ten or twelve times between the first and second floors." J. R. Hash, employee of appellant, who made the inspection a few days before the accident, and who was evidently the one referred to by Beasley, Jr., swore that all he did was to grease the shaft and wheel over which the cables passed and put some oil on the safety device or governor, and that approximately ten feet of the cable would pass over the wheel between the noises it was making at that time. It was also shown that the noise coming from the shaft sounded like "thumps" while the one in the safety device was a "knock" as of metal against metal. If coming from the former source, not more than three such noises could have been heard within the 18 feet between the first and second floors, because in a revolution of the shaft ten feet of cable would pass over the wheel; whereas, according to the president of the Music Company there were ten to twelve such noises within that distance and indicating that they were coming from the dogs of the governor. When the safety device was taken off the elevator it was found in very bad condition and Ray, appellant's inspector, requested Simpson, representing the Otis Elevator Company, to say nothing about it.

It is true that Hash denied putting the extra washers behind the springs, and there was no one who saw him do it, but the evidence just referred to seems to establish rather definitely that the trouble which he corrected on Saturday before the elevator fell on Monday had something to do with the governor or safety device and not the cable wheels and shaft, as he testified. One reading his testimony can not but be impressed with its evasiveness and lack of candor. Ray, his "Boss", who was present following the accident when the safety device was removed and who requested Simpson to say nothing about its condition, although in Dallas at the time of the trial, was not called to testify.

As to the admissibility of the contract between appellant and the Music Company, the very purpose of this service was to see that the elevator was kept in reasonably safe running condition and its terms and provisions showed the extent of the undertaking by appellant. If it was responsible for placing washers behind the springs, this act of commission as distinguished from omission, according to the weight of the evidence, caused the accident. The service required of appellant was not only for the Music Company but for the benefit of persons using the elevator, by preventing just such accidents as happened here. It was as much a tort as the creation of any other situation of great danger which appellant was bound to know would probably injure someone. Taking all these facts together we think there was substantial evidence, although largely circumstantial, from which the jury might conclude that Hash or some other agent of the appellant was responsible for the condition of the safety device.

The president of the Music Company swore that he relied exclusively upon appellant "to look after this elevator" and it was shown that, although the stipulated monthly charge for the service was only $12, appellant was paid many additional sums during the course of the year for labor and material including among other items the sum of $8 for "relining brakes on elevator", $8.36 for "furnishing and installing new governor rope", and $2.75 for "furnishing and installing safety switch handle". We are impressed, therefore, both by the wording of the contract and the construction of it by the parties, that it contemplated the adjusting or repairing of these springs when necessary. As to the third and fourth contentions, we think the status of appellant was that of an independent contractor, and the act of negligence was of such nature that it was not reasonably possible for the Music Company, which relied upon appellant to do it properly, to have discovered the condition of the spring until the cables broke and the elevator fell. As to the fifth point, Simpson testified that he was present, whether on the day of the accident or the next, when the agents of appellant removed the safety device from the elevator and that it was in the condition which he described. There was no reason to believe that anyone had had time or opportunity to change it after the fall. The sixth point has been covered by the discussion of the evidence above. On the seventh point, we think the court's instructions on the issues of the case were sufficiently clear to enable the jury to understand it.

(8) The inspections made by the representative of Texas Employers Insurance Company and others were much earlier than those of appellant's representative on the Saturday preceding the accident on Monday. The matter simply boils down to the proposition that there was substantial evidence from which the jury could conclude that the condition of the safety device, which prevented its functioning properly when the cables broke, was attributable to the fault of appellant.

Judgment affirmed.