**Jimmie PLANK and Terri Plank,**
**Plaintiffs/Appellants,**

v.

**UNION ELECTRIC COMPANY,**
**Defendant/Respondent.**

No. 66404.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 18, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 31, 1995.

**130**

Richard E. Schwartz, Richard Schwartz & Associates, Ltd., St. Louis, for plaintiffs/appellants.

Robbye Hill Toft, Robbye Hill Toft & Associates, St. Louis, for defendant/respondent.

PUDLOWSKI, Judge.

Plaintiff[1] appeals a pretrial order for summary judgment against his claim for negligent performance of an undertaking to inspect for safety violations under § 324A(b) of the Restatement (Second) of Torts (1965). We affirm because the facts asserted by plaintiff are insufficient to state a cause of action under § 324A(b).

Plaintiff's accident took place during the construction of Union Electric's (UE's) Callaway nuclear facility. Plaintiff was a worker employed by Daniel, Inc., (Daniel) a major construction contractor. Plaintiff was charged by Daniel with the duty of unloading heavy jackhammers from a truck onto a platform connected to a tool storage trailer. Overhead wires prevented use of the truck's "boom" hoist to unload the jackhammers. Consequently, plaintiff had to unload the jackhammers by hand. The position of the stairs leading up to the platform and of the nearby road prevented the truck from backing up flush to the platform. Therefore, plaintiff had to step off of the back of the truck while carrying a heavy jackhammer and across a four to five foot wide space and down a few feet to reach the platform.

Plaintiff recognized that this maneuver was dangerous, and raised the issue at Daniel safety meetings, at least one of which was attended by UE engineers. No steps were taken by Daniel or UE to remedy the problem. On the occasion of his injury, plaintiff lost his balance while stepping onto the platform. He fell down the stairs and ruptured a disc in his back.

Plaintiff recovered Workers' Compensation benefits from his employer, Daniel. He is now suing UE in tort, in his fifth amended petition, on the sole theory that UE was negligent in the performance of its undertaking of the duty to inspect for safety violations. He alleges that UE vigorously used its contractual power to stop work for safety violations, and that its active role in safety activities at the site showed an intent to assume and undertake the duty to inspect for safety violations which Daniel owed to its employees. He asks us to now recognize the Second Restatement's § 324A(b), which imposes liability upon those who negligently perform a duty owed by another to a third person for his protection.

Plaintiff is not suing under § 414, entitled "Negligence in Exercising Control Retained by Employer." Therefore, this court's decision in *Werdehausen v. Union Elec. Co.*, 801 S.W.2d 358 (Mo.App.E.D.1990), which was

---

1. Jimmie Plank was the injured party. Terri Plank, his wife, joined this action for loss of consortium. This opinion refers to "plaintiff" in the singular, however, the holding in this case applies to both parties.

decided exclusively upon § 414, is not controlling precedent in this case.[2]

■ Plaintiff's selected theory in this case is § 324A(b). Section 324A reads as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

Although Missouri courts have recognized subsection (a) as a valid cause of action, *see, e.g., Brown v. Michigan Millers Mut. Ins. Co., Inc.,* 665 S.W.2d 630 (Mo.App.W.D.1983), the application of subsection (b) is a case of first impression in Missouri. These subsections, worded in the alternative, each stand alone as independent causes of action. *Id.* at 636.

It is very curious that subsection (b), the provision involved in this case, does not incorporate the traditional bases for placing liability upon volunteers—reliance and increased risk. Subsection (b) does not require a showing of an increased risk of harm (as in subsection (a)), and does not require reliance upon the undertaking (as in subsection (c)).

A superficial reading of subsection (b) would lead one to believe that *any* endeavor to help another in the performance of its duty to protect a third person would lead directly to liability. This would punish those who voluntarily assist others even where the third person was not made worse off by the volunteer acts (no reliance or increased risk).

It would discourage many benign acts of assistance and work a revolution in tort law.

However, it is clear that this broad and superficial reading was not intended by the drafters of the Second Restatement. Upon reading the comments and illustrations accompanying subsection (b), it becomes apparent that merely assisting another in the performance of his duty to a third person is not enough to trigger liability. Rather, one must intend to completely *subsume* or *supplant* the duty of the other party in order to incur liability for nonperformance of that duty. It is not enough merely to intend to *supplement* the duty of the other party.

Comment d describes a managing agent incurring liability for negligent repairs when he "takes charge" of a building for the owner. Illustration 2 describes a person incurring liability for negligent inspection when employed to inspect his employer's telephone poles. Illustration 3 describes a person incurring liability for negligent inspection of work conditions when he becomes the superintendent of construction work. One common facet of each of these scenarios is that the party to be charged is undertaking to perform the other's duty completely. A managing agent does not merely assist in the repair of a building, he undertakes the responsibility completely. Similarly, a pole inspector does not merely assist in the inspection of a pole, he does the inspection completely. Likewise, a superintendent does not merely assist with the oversight of construction, he completely assumes that duty.

It is reasonable to place liability upon a party who has clearly undertaken primary responsibility for services upon which third parties depend. This is the apparent rationale behind § 324A(b). The Eighth Circuit held that an insurer providing safety services to a manufacturer was not liable to the user of a manufactured product because the insurer did not "replace" the manufacturer's duty to design a safe product. *Obenauer v. Liberty Mut. Ins. Co.,* 908 F.2d 316, 317 (8th Cir.1990). Similarly, the Fifth Circuit requires that the service to a third party be "delegated" to the party charged, before

---

**2.** "Plaintiff's chosen theory of liability, as reflected in his verdict directing instruction, was a claim under § 414." *Werdehausen,* 801 S.W.2d at 363.

holding that party responsible under subsection (b). *Davis v. Liberty Mut. Ins. Co.,* 525 F.2d 1204, 1207–08 (5th Cir.1976). Merely providing "recommendations as an aid" to the other party in fulfilling the duty to the third party does not give rise to liability. *Id.* Another federal court interpreting subsection (b) maintains that "[l]iability under section 324A(b) arises in the workplace setting only if the actor's undertaking was intended to be in lieu of, rather than as a supplement to, the employer's own duty of care to the employees." *Heinrich v. Goodyear Tire and Rubber Co.,* 532 F.Supp. 1348, 1355 (D.Md.1982).

Consequently, we hold that a valid cause of action under § 324A(b) entails a showing of intent to become the primary provider of a service for the protection a third person, and not merely a showing of intent to assist or supplement the service provided by the other.

■ After a careful reading of plaintiff's affidavits and depositions we can find no averments which indicate that UE intended to supplant Daniel as the primary provider of safety services to plaintiff. Plaintiff's counsel acknowledged this at oral argument, stating that "UE did not replace Daniel, but UE actively worked alongside Daniel in performing a safety program for Daniel employees." At best, plaintiff's evidence would establish that UE assisted Daniel in its safety program. We will not foist liability upon an actor who assists another in providing safety services to a third person, absent a showing of increased risk, reliance, or assumption of primary responsibility for the safety service.

We need not consider plaintiff's motion to strike UE's supplemental legal file, for we relied only upon plaintiff's evidence in reaching our present decision.

■ Finally, plaintiff raises for the first time an allegation that UE's motion for summary judgment was procedurally defective. Rule 74.04(c) requires "specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts." Plaintiff challenges UE's motion

on the basis that it contains no specific references.

Plaintiff relies on *Moss v. City of St. Louis,* 883 S.W.2d 568 (Mo.App.E.D.1994), in support. In *Moss,* the plaintiff argued to the trial court that the motion for summary judgment was procedurally defective. Yet, the trial court granted the motion for summary judgment. This court reversed the trial court because the motions for summary judgment did not comply with specificity requirement of Rule 74.04(c).

In *Snelling v. Bleckman,* 891 S.W.2d 572 (Mo.App.E.D.1995), we held that "[t]he plain purpose of this rule is to 'apprise the opposing party, the trial court, and in turn the appellate court of the specific basis on which the movant claims [entitlement] to summary judgment.' " *Snelling,* 891 S.W.2d at 573, *citing Moss, supra,* at 569. *Snelling* reversed a motion which "lumped" multiple facts into single paragraphs, and did not cite documents to show specifically where issues did not exist.[3]

This rule has been assiduously applied. *Snelling* tersely warns that "A motion which fails to meet new Rule 74.04(c)(1)'s requirements is defective." 891 S.W.2d at 574, *citing Moss, supra,* at 569. We acknowledge that UE's motion for summary judgment did not meet the rigid requirements of *Moss* and *Snelling.*

■ However, we hold that the rule need not be applied in this case because error in the application of this rule was not raised below, and we find no manifest injustice resulting from this error. In *Moss,* unlike in the instant case, "Plaintiff raised the issue of the procedural defect in [defendant's] motion to the trial court." *Moss, supra,* at 569. We make this distinction for important reasons: "It is a fundamental rule that contentions not put before the trial court will not be considered by the appellate court; an appellate court will not convict a trial court of error on an issue which was not put before it to decide." *Strunk v. Hahn,* 797 S.W.2d 536, 549 (Mo.App.S.D.1990). Requiring an objection at the proper time permits immediate

---

**3.** We opt not to address the practical and metaphysical problems with the requirement to cite

specific facts concerning material issues which are alleged not to exist.

consideration of the issue "without the delay, expense or hardships of an appeal." *Skelton v. General Candy Co.,* 539 S.W.2d 605, 610 (Mo.App.1976).

Plaintiff in this case made no written or oral objections to the procedural form of UE's motion for summary judgment. Although plaintiff responded in writing to UE's motion, the response did not cite Rule 74.04(c) or in any other way object to the form of UE's motion. The trial court's judgment asserts that it "disposes of all issues, parties, claims, rights and liabilities." It also states that plaintiff's counsel failed to appear on each of the two scheduled hearing dates. Nothing else in the record before us reveals any objection to the motion or the trial court's order. It is evident that plaintiff did not even formulate the procedural objection in his mind until he wrote his appellate brief, for he did not include this issue in his statement of the issues on appeal filed 18 days after his notice of appeal. Therefore, in the absence of a proper objection to the form of the motion for summary judgment, this point is deemed waived.

Nevertheless, Rule 84.13(c) gives this court discretion to review improperly raised issues in order to correct manifest injustice. We find no manifest injustice on these facts. Plaintiff claimed that his cause of action is based upon Restatement (Second) of Torts § 324A(b), and we have ascertained by our review of UE's motion and accompanying fourteen page brief, complete with specific page references to relevant documents, as well as plaintiff's exhibits submitted in opposition to the motion, that the trial court had sufficient information to determine that plaintiff failed to present a submissible case on negligent performance of an undertaking under the Restatement. We are confident that in this case the fundamental purposes of Rule 74.04(c) were met, and that the judgment of the trial court was proper and determined without speculation or conjecture.

Judgment affirmed.

SMITH, P.J., and WHITE, J., concur.