

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| RANDY W. BERLINER, | ) | No. ED103507 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | 14AB-CC00083 |
| | ) | |
| MILWAUKEE ELECTRIC TOOL CORP., | ) | Honorable Gael D. Wood |
| AMEREN CORPORATION, GARY | ) | |
| KRUPEY, THOMAS C. SEE, G. GEORGE | ) | |
| HABERBERGER, JAMES ROBERT | ) | |
| DEAN, TIMOTHY CARRICO AND | ) | |
| RANDY SHELL, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| And, | ) | |
| | ) | |
| AMEREN SERVICES CORPORATION, | ) | |
| | ) | |
| Respondent. | ) | FILED:  June 30, 2016 |

## OPINION

In December 2011, while employed by Ameren Corporation (d/b/a Union Electric Company, "Union Electric") at its power plant in Labadie, Missouri, Catherine Berliner ("Decedent") was using a hammer drill manufactured by Milwaukee Electric Tool Corporation ("Milwaukee") on an 85-foot-high platform. Decedent fell from the platform and died from the resulting injuries. Her husband, Randy Berliner ("Plaintiff"), filed a wrongful death suit. After two amendments to the pleadings, Plaintiff asserted claims against Milwaukee, against six individual

defendants, and against Ameren Services Company ("ASC"). Based on a motion to dismiss for inadequate pleadings, the trial court dismissed three of the ten counts in Plaintiff's Second Amended Petition, including the sole count against ASC.

Now Plaintiff appeals the dismissal of his claim against ASC. Because Plaintiff stated a cause of action against ASC, we reverse the judgment in favor of ASC and remand for further proceedings.

Factual and Procedural Background

Plaintiff filed the instant suit against Milwaukee and Union Electric on April 25, 2014. In October 2014, the trial court granted Union Electric's motion to dismiss, which it had filed four months prior. On November 3, 2014, Plaintiff moved for leave to file an amended petition that included claims against Milwaukee, ASC, and six individual defendants, all of whom were employed by Union Electric. The same day, the case was removed to federal district court, which remanded it back to state court about two weeks later.

After remand, Plaintiff's motion to file an amended petition was granted and Plaintiff filed the First Amended Petition. ASC and the Union Electric employees jointly moved to dismiss the claims against them, and in February 2015, after another hearing, the trial court granted their motion. Thereafter, Plaintiff moved for reconsideration of that dismissal, which the trial court granted. Plaintiff filed his Second Amended Petition, which is the subject of this appeal.

The Second Amended Petition comprised five counts against Milwaukee, two counts against the six Union Electric employees (including foreperson Gary Krupey), two counts against

Krupey alone, and one count against ASC. Plaintiff levelled his allegations against ASC in two preliminary paragraphs and in Count VI, as follows:[1]

## COUNT VI
### (NEGLIGENCE–AMEREN SERVICES COMPANY)

5. Ameren Corporation, is now, and was at all times herein mentioned, a duly organized and existing corporation, incorporated in the State of Missouri with its principal place of business within the State of Missouri.[2]

6. Ameren Services [Company], is now, and was at all times herein mentioned, a duly organized and existing corporation, incorporated in the State of Missouri with its principal place of business within the State of Missouri.[3]

54. Ameren Services, by and through its agents, officers, and/or employees was responsible for and oversaw the safety at the Ameren plant including: 1) the training of individuals at the Ameren Plant, 2) issuing, implementing, enforcing and advising as to safety policies, procedures and guidelines, and 3) platform and tools, and as follows:

  a. Further, upon information and belief, and as testified to by Ameren's Manager of Corporate Safety and Health, Ameren Services provides regulatory compliance, safety compliance, guidance and support to Ameren Missouri Generation plants, including the Subject Ameren Plant, regarding safety applicable to workers in order to prevent serious injury or death, including from the risk of fall; and

  b. Ameren Services provides such regulatory compliance, safety compliance, guidance and support based on the American National Standards Institute, peer and utility information, legal regulations, and umbrella safety policies and procedures, including those issued by Ameren Corporation. This also includes, but is not limited to the following: 1) Ameren's Safety and Health Policy wherein Ameren agrees to comply with applicable safety and health procedures, law and regulations, and to provide training to perform jobs in a safe and responsible manner, and provide the necessary resources to support safety and health, and 2) Ameren's Safety Rules to Live By requiring the use of fall protection where there is a risk of fall that is greater than 6 feet.

---

[1] We include only the factual allegations from the paragraphs of the Second Amended Petition relevant to this appeal. We do not reproduce the case citations that Plaintiff included in those paragraphs.

[2] Ameren Corporation is referred to throughout Plaintiff's pleadings as "Ameren" or as "Union Electric."

[3] Ameren Services Company is referred to throughout Plaintiff's pleadings as "Ameren Services."

55. Ameren Services, by and through its agents, officers, and/or employees, had and undertook a separate and independent duty owed to Decedent to repair, inspect, refurbish, and maintain properly the Hammer-Drill and its component parts located at the Ameren plant in a proper, professional and workmanlike manner.

56. Ameren Services, by and through its agents, officers, and/or employees, had and undertook a separate and independent duty to assure a safe platform, including the safe use of the Hammer-Drill on the platform in a proper, professional and workmanlike manner, and the safe and appropriate use of the Hammer-Drill for the application as applied to the lance soot blower.

57. Ameren Services, by and through its agents, officers, and/or employees, had and undertook a separate and independent duty to assure a safe platform at the Ameren plant, including assuring that all railings on the platform were safe, free from dangerous conditions, unbent or undamaged, and free from dangerous gaps between such railings.

58. Ameren Services, by and through its agents, officers, and/or employees, had and undertook a separate and independent duty to inspect, maintain, repair the platform properly, including all railings, in a proper, professional and workmanlike manner.

59. Ameren Services, by and through its agents, officers, and/or employees, had and undertook a separate and independent duty to assure that proper safety methods, training, policies and procedures were in place at the Ameren plant, including the proper and safe use of a safety harness/straps on such platforms.

60. Ameren Services, by and through its agents, officers, and/or employees, had and undertook a separate and independent duty to warn of dangers of the Hammer-Drill and the unsafe and dangerous condition of the platform at the Ameren plant.

61. Ameren Services, by and through its agents, officers, and/or employees, was negligent, grossly negligent, reckless, careless, unskillful, and/or malicious and breached its separate and independent duty of care as set forth above in the following manners:

    a.   Ameren Services failed to repair, inspect, refurbish, and maintain properly and safely the Hammer-Drill and its component parts located at the Ameren plant;

    b.   Ameren Services failed to assure a safe platform, including the safe use of the Hammer-Drill on the platform in a proper, professional and workmanlike manner, and approved the use of the Hammer-Drill for the application as applied to the lance soot blower when such application was in appropriate [sic].

4

c. Ameren Services failed to assure a safe platform, including assuring that all railings on the platform were safe, free from dangerous conditions, unbent or undamaged, and free from dangerous gaps between such railings;

d. Ameren Services failed to inspect, maintain, repair the platform, including all railings, in a professional and workmanlike manner;

e. Ameren Services failed to assure that proper safety methods, policies, procedures, training and guidelines as set forth in Paragraph 67 [sic] were issued, implemented, and enforced at the Ameren Plant, including the proper and safe use of a safety harness/straps on such platforms, and the safe use of the Hammer-Drill;

f. Ameren Services failed to advise regarding proper safety methods, policies, procedures, and guidelines for the Ameren Plant as set forth in Paragraph 67, including the proper and safe use of a safety harness/straps on such platforms, and the safe use of the Hammer-Drill; and

g. Ameren Services failed to warn of the dangers of the Hammer-Drill, and the unsafe and dangerous condition of the platform at the Ameren plant.

62. As a direct and proximate result of the negligent, grossly negligent, reckless, carelessness, unskillfulness, and/or malicious acts and behavior of Ameren Services, the Decedent sustained serious injury, pain, suffering and death; and, as a result, [Plaintiff] has suffered and will suffer in the future a loss of services, economic support, companionship, care, comfort, instruction, guidance, and counsel of his spouse.

63. Ameren Services knew or had information from which Ameren Services, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of injury and death.

64. The conduct of Ameren Services, as set forth above, showed complete indifference to or conscious disregard for the safety of the Decedent, and others, justifying an award of punitive damages and/or damages for aggravating circumstances in such sum which will serve to punish Ameren and deter Ameren and others from like conduct.

The individual defendants and ASC, arguing that Plaintiff did not articulate that they owed a legal duty to Decedent, moved a third time to dismiss Plaintiff's pleadings. The trial court granted

5

dismissal with prejudice, except as to the two counts against Defendant Krupey. Proceedings against Krupey and against Milwaukee have since been stayed in the trial court.

Thereafter, Plaintiff moved the trial court to reconsider its ruling as to ASC, and in the event the trial court denied its motion, to expressly determine that "there is no just reason for delay" under Missouri Rule of Procedure 74.01(b). That rule acts as an exception to the general proposition that, without a final judgment disposing of all parties and issues, we do not have authority to hear an appeal. Bellinger v. Lindsey, 480 S.W.3d 345, 347–48 (Mo. App. E.D. 2015). The trial court denied Plaintiff's motion to reconsider, but did certify that there is no just reason for delay of an appeal of the judgment dismissing Plaintiff's case against ASC.

This timely appeal followed. Plaintiff asserts that the trial court should not have granted dismissal in favor of ASC because it properly pled that ASC had a duty to Decedent. For the reasons explained below, we reverse the trial court's judgment regarding the dismissal of ASC, and remand for further proceedings.

Standard of Review

We review the trial court's grant of a motion to dismiss de novo. Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008). A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. State ex rel. Henley v. Bickel, 285 S.W.3d 327, 329 (Mo. banc 2009). To state a claim, a petition must invoke substantive principles of law entitling the plaintiff to relief and allege ultimate facts informing the defendant of what the plaintiff will attempt to establish at trial. McIlvoy v. Sharp, 485 S.W.3d 367, 372 (Mo. App. W.D. 2016).

Analysis

Plaintiff makes a claim of common law negligence against ASC. All negligence actions have three elements in common: 1) that a duty existed on the part of the defendant to protect the plaintiff from injury; 2) that the defendant failed to perform the duty; and 3) that the defendant's failure proximately caused the plaintiff's injury. Carman v. Wieland, 406 S.W.3d 70, 76 (Mo. App. E.D. 2013). The trial court dismissed Plaintiff's case against ASC after finding ASC owed no duty to Decedent.

The existence of duty is a threshold matter, id., and is purely a question of law, Hoffman v. Union Elec. Co., 176 S.W.3d 706, 708 (Mo. banc 2005). In deciding whether ASC owed a duty to Decedent, we address several of ASC's arguments against liability based on immunities rooted in workers' compensation law and also consider the application of common law negligence principles.

### 1. *No Immunity Under Workers' Compensation or at Common Law*

We note that before the enactment of Missouri's workmen's compensation law in 1925, an injured employee could sue her employer in a common law negligence action. Peters v. Wady Indus., Ind., --- S.W.3d ----, 2016 WL 3180586, at *4 (Mo. banc 2016). But the enactment of the workmen's compensation law altered that landscape by creating a "no-fault system of compensation for the employee," under which an employer was liable irrespective of negligence, in exchange for immunity against common law negligence actions. Id. (citing Gunnett v. Girardier Bldg. & Realty Co., 70 S.W.3d 632, 636 (Mo. App. E.D. 2002)). As it concerned an employee's work-related injuries, the scheme was intended to replace common law actions against employers for an employee's work-related injuries. Bass v. Nat'l Super Markets, Inc., 911 S.W.2d 616, 619 (Mo. banc 1995). The Supreme Court of Missouri has described workers' compensation law as

7

the product of a trade-off: the employer forfeits his common law defenses to suits against him for the employee's injuries and assumes automatic liability; the employee forfeits his right to a potentially lucrative common law judgment in return for assured compensation.

Zueck v. Oppenheimer Gateway Props., 809 S.W.2d 384, 388 (Mo. banc 1991).

First, we acknowledge that any corporate ties between ASC and Union Electric do not protect ASC from suit. The Second Amended Petition alleges that Ameren Corporation/Union Electric and Ameren Services Company (ASC) are separate corporations, duly organized and incorporated in the State of Missouri, each with its principal place of business within the State of Missouri. In Boswell v. May Centers, we addressed whether workers' compensation law bars a common law claim against a related corporate entity. Boswell, 669 S.W.2d 585 (Mo. App. E.D. 1984). Looking to other jurisdictions for guidance, we found that the majority of jurisdictions hold "that the immunity from common law liability is applicable *only to the immediate employer* and does not extend to the affiliated parent, subsidiary, or sibling corporation." Id. at 586 (emphasis here). We summarized the rationale underlying this conclusion to be

> found in the basic concept of separateness and individuality of distinct corporate entities. The purposes for which a corporation determines to conduct its operations through subsidiaries rather than divisions are myriad, including tax considerations, financing, labor relations and managerial organization with clearly defined channels of authority and responsibility. Perhaps the most common purpose is to shield the parent from the financial, contractual, and tort liabilities of the subsidiary. It is totally incongruous and patently unjust to permit the parent to hide behind the shield of separate corporate identity when advantageous, but to disavow such separateness when it is not.

Id.

We found that rationale persuasive, in conformity with Missouri's corporate law and with our state's policy that common law rights and remedies should not be taken from an employee unless they are abolished by clear and unambiguous terms. Id. at 587. Though we acknowledge that the relationship between two companies can in some circumstances affect whether immunity

8

under workers' compensation applies,[4] we find no reason to depart from <u>Boswell</u>'s logic in the circumstances presented here.

Next, we note that the parties agree ASC was *not* Decedent's employer. ASC is therefore a third party and not entitled to an employer's immunity from a negligence action. Though the scope of a third party's duty vis-à-vis a workplace injury has not been litigated with great frequency, longstanding precedent permits an employee who was injured on the job to sue a third party in tort. See <u>Schumacher v. Leslie</u>, 232 S.W.2d 913, 916 (Mo. banc 1950) ("The Compensation Act does not take away the employee's common-law right against an offending third person."). The workmen's compensation statute implicitly acknowledges that such third-party claims are permissible: "Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee…" Section 287.150, RSMo Supp.2012; <u>James v. Poppa</u>, 85 S.W.3d 8, 10 (Mo. banc 2002).

Relatedly, we dispense with the notion that "[o]nly Union Electric Company, [Decedent's] employer, owed" a safety-related duty to Union Electric employees. It is true that an employer owes certain duties to its employees with respect to safety, and that those duties are frequently called "nondelegable." <u>Peters</u>, 2016 WL 3180586, at *8 (citing <u>Edge v. Sw. Missouri Elec. Ry. Co.</u>, 104 S.W. 90, 97 (Mo. 1907)). Those duties are continuing in nature and include a duty to provide a safe place to work; to provide safe appliances, tools and equipment; and to see that instrumentalities of the workplace are used safely. <u>Id.</u>

But ASC misrepresents what "nondelegable" means in this context. A nondelegable duty is not one for which *no other party* can be liable; it is one for which the *employer cannot escape* liability. The duties of employee safety "cannot be delegated to a fellow servant *so as to relieve the*

---

[4] In certain circumstances, the Workers' Compensation statute deems a contractor to be the employer (*i.e.*, a "statutory employer") of its subcontractors' employees. See § 287.040; <u>Shaw v. Mega Indus. Corp.</u>, 406 S.W.3d 466, 468–69 (Mo. App. W.D. 2013).

9

*master from liability* for the negligent performance by such servant of an act constituting part of such duty of the master." Hansen v. Ritter, 375 S.W.3d 201, 209 (Mo. App. W.D. 2012) (quoting Bender v. Kroger Grocery & Baking Co., 276 S.W. 405, 406 n. 2 (Mo. 1925)) (emphasis here). As the Restatement of Agency clarifies,

> The words 'non-delegable duty' do not imply that there are duties which cannot be discharged by appointing others to perform them. They describe duties the performance of which *can properly be delegated* to another person, but *subject to the condition that liability follows* if the person to whom the performance is delegated acts improperly with respect to it.

RESTATEMENT (SECOND) OF AGENCY, Title C, *Introductory Note to Title C: Non-Delegable Duties of Master*, at 435 (AM. LAW INST. 1957) (emphasis here). Following ASC's logic would effectively endorse a rule whereby an injured employee can never maintain a claim in tort against a third party for job-related injuries stemming from an unsafe work environment. As noted above, such third-party claims are cognizable in Missouri.

Finally, we find ASC's reliance on so-called "co-employee cases" to be misplaced. ASC asserts that, because it was a third party carrying out Union Electric's nondelegable duties, the common law rule against co-employee negligence liability precludes Plaintiff's claim. ASC's position is flawed: that rule only protects a plaintiff's co-employees, not all third parties. At common law, a co-employee is liable to his co-workers only for breaching a legal duty owed independently of any master-servant relationship. Peters, 2016 WL 3180586, at *7 (citing Hansen, 375 S.W.3d at 213). If a plaintiff's co-employees are assigned to perform an employer's safety-related duties, "it is solely by virtue of the master-servant relationship." Peters, 2016 WL 3180586, at *7–8. Absent the master-servant relationship, a co-employee would have no duty to perform those nondelegable duties. Id. at *7. In other words, the rule excusing a co-employee from liability

10

is wholly dependent on the master-servant relationship between employer and a plaintiff's co-employee.

Here, according to the pleadings, ASC was a corporation enlisted to provide safety services. It would defy logic for us to conclude that a corporate entity was the co-employee of Decedent, much less that ASC or its employees were subject to Union Electric's control via a master-servant relationship at this stage of the case. ASC cannot, therefore, benefit from the common law co-employee negligence exception to liability.

Having concluded that a common law negligence claim against a third-party corporation for an employee's on-the-job injuries is permissible under our precedent, we examine whether, under Missouri's pleading rules, the Second Amended Petition properly alleged that ASC owed a duty to Decedent.

### 2. *Sufficient Allegations to Conclude ASC had Legal Duty to Decedent*

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. Bickel, 285 S.W.3d at 329. To state a claim, a petition must invoke substantive principles of law entitling the plaintiff to relief and allege ultimate facts informing the defendant of what the plaintiff will attempt to establish at trial. McIlvoy, 485 S.W.3d at 372. Missouri courts apply a "fact pleading" standard: the role of pleadings in Missouri is to identify facts upon which the plaintiff's claim rests. Charron v. Holden, 111 S.W.3d 553, 555 (Mo. App. W.D. 2003). While conclusory allegations are not considered, see id., we take Plaintiff's averments as true, and construe all reasonable inferences therefrom liberally in Plaintiff's favor, Bickel, 285 S.W.3d at 329.

Missouri courts have recognized that a duty toward a third person may be assumed or undertaken, and when so assumed, a defendant must exercise reasonable care in carrying out the

11

duty. Kraus v. Hy-Vee, Inc., 147 S.W.3d 907, 924 (Mo. App. W.D. 2004) (internal citation omitted). We look to the three-section disjunctive test in section 324A of the Restatement (Second) of Torts as the touchstone for whether a defendant has assumed a duty toward a third person. See Brown v. Michigan Millers Mut. Ins. Co., Inc., 665 S.W.2d 630 (Mo. App. W.D. 1983) (§ 324A(a)); Plank v. Union Elec. Co., 899 S.W.2d 129, 131–32 (Mo. App. E.D. 1995) (§ 324A(b)[5]); Kraus, 147 S.W.3d at 924–25 (§ 324A(c)). The section, titled "Liability to Third Person for Negligent Performance of Undertaking," provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (AM. LAW INST. 1977).

In Kraus, a case cited by Plaintiff, a Western District panel reversed the grant of judgment on the pleadings[6] to a company that provided to the Missouri Highways and Transportation Commission ("MHTC") a study about traffic at the site of a fatal accident. Kraus v. Hy-Vee, Inc., 147 S.W.3d at 910–12. It was not alleged that the company had ultimate control of the intersection, but rather that it conducted a study, that the study was vague and incorrect, that the company failed

---

[5] ASC relies on Plank and its holding that more than a showing of intent to "assist or supplement" the service provided by another is necessary to show liability. Plank, 899 S.W.2d at 132. But Plank only addresses subsection (b) of § 324A, and as discussed herein Plaintiff has pled sufficient facts to support the theory that ASC had a separate, independent duty to Decedent under subsection (c).

[6] The position of a party moving to dismiss, as ASC has done here, is similar to that of a party moving for judgment on the pleadings, *i.e.*, assuming the facts pleaded by the opposite party to be true, those facts are nevertheless insufficient as a matter of law. Anderson v. Crawford, 309 S.W.3d 863, 866 (Mo. App. W.D. 2010).

to make appropriate recommendations to make the roadway safer, and that the MHTC relied on the study to the detriment of the decedent and her family. Id. at 924. Our colleagues, noting that Missouri courts have applied Section 324A in other cases, concluded that the plaintiffs had stated a claim for relief against the company under the principles embodied in Section 324A(c). Id. at 925.

Other authorities discuss the contours of duty owed a third party as described in § 324A(c). An illustration from the Restatement offers the following hypothetical scenario:

> A Company employs B Company to inspect the elevator in its office building. B Company sends a workman, who makes a negligent inspection and reports that the elevator is in good condition. Due to defects in the elevator, which a proper inspection would have disclosed, the elevator falls and injures C, a workman employed by A Company. B Company is subject to liability to C.

RESTATEMENT (SECOND) OF TORTS § 324A cmt. e, illus. 4 (AM. LAW INST. 1977).[7] Though the Reporter's Notes indicate that Illustration 4 is based on Van Winkle v. Am. Steam Boiler, 19 A. 472 (N.J. Sup. Ct. 1890), our research reveals that its facts are drawn from three other cases: Westinghouse Elec. Elevator Co. v. Hatcher, 133 F.2d 109 (5th Cir. 1943); Bollin v. Elevator Const. & Repair Co., 63 A.2d 19 (Pa. 1949); and Jones v. Otis Elevator Co., 56 S.E.2d 684 (N.C. 1949).[8] We note that Westinghouse, Bollin, and Jones are still good law. Those cases also teach that the third party to whom one company owes a duty can be an employee of the company with which it has contracted for safety or inspection purposes. See Westinghouse, 133 F.2d at 109

---

[7] Although neither party has argued that we should look to 2012's Restatement (Third) of Torts for guidance, we note that subsection (c) to the new Restatement's § 43, which replaces § 324A, includes broader language than the older version. Compare RESTATEMENT (SECOND) OF TORTS § 324A(c) (duty where "the harm is suffered because of reliance of the other or the third person upon the undertaking"), with RESTATEMENT (THIRD) OF TORTS § 43(c) (duty where "the person to whom the services are rendered, the third party, or another relies on the actor's exercising reasonable care in the undertaking.")

[8] The facts of Van Winkle are nevertheless instructive: there, a company hired to inspect a steam boiler had a duty to third persons injured when the boiler exploded. See Van Winkle, 19 A. at 472–73.

(employee sued insurer who had contracted to furnish elevator inspection services); Bollin, 63 A.2d at 19–20 (employee sued elevator servicing company that had contracted with employer).

In a case where an employee sued an insurance company that had inspected an injury-causing air hose at his workplace, the Supreme Court of Georgia interpreted § 324A(c) and held:

> [U]se by a third person of a defective instrumentality, whether it be a vehicle, an elevator, a machine or an air hose, in the manner in which such instrumentality is customarily used, where the fact of inspection is known to the third person but the defect is unknown, demonstrates reliance by the third person upon the defendant's safety inspection of the instrumentality.

Smith v. Universal Underwriters Ins. Co., 752 F.2d 1535, 1537 (11th Cir. 1985).[9] "[W]here liability is based on negligent safety inspections, reliance typically will be demonstrated by continuation of business as usual in the belief that any necessary precautions would be taken or called to the user's attention." Id.

Here, according to the Second Amended Petition as alleged in Paragraphs 61(a)–(g), ASC was responsible for and oversaw the safety at Union Electric's plant. Its responsibilities included, but were not limited to, inspecting, refurbishing, and maintaining the hammer drill used by Decedent when she fell from Union Electric's 85-foot-high platform. It was also alleged that the platform itself was subject to maintenance and inspection by ASC, which was tasked with ensuring "that all railings on the platform were safe, free from dangerous conditions, unbent or undamaged, and free from dangerous gaps between such railings." Whether Plaintiff can eventually adduce evidence sufficient to support these allegations is a matter left for a later stage in the proceedings, but the allegations themselves support a theory that ASC owed a duty to Decedent.

ASC's responsibilities regarding plant and instrumentality safety at the Union Electric plant make its position analogous to the following: an elevator servicing company where the elevator's

---

[9] The Supreme Court of Georgia addressed the issue when the U.S. Court of Appeals for the Eleventh Circuit certified the question for clarification.

14

failure injured an employee; the inspector of a steam boiler where the boiler explosion injured a third party; an insurance company that had negligently inspected a high pressure air hose that exploded and injured an employee; or the conductor of a negligently performed traffic study, reliance upon which led to a third-party's injury. As in <u>Smith</u>, we can infer that Decedent relied upon ASC's inspection and maintenance of the defective drill and/or defective platform simply by the fact that she was using the hammer-drill on the platform: "business as usual in the belief that any necessary precautions would be taken or called to [her] attention." <u>Smith</u>, 752 F.2d at 1537.

Conclusion

We find Plaintiff's pleadings contain facts that, when construed in Plaintiff's favor, are sufficient to support the premise that ASC had a duty to Decedent under common law negligence and § 324A(c). Dismissal of the case against ASC was therefore improper and we reverse the judgment in favor of ASC and remand for further proceedings.

_____
Mary K. Hoff, Judge

Robert G. Dowd, Jr., Presiding Judge and Roy L. Richter, Judge, concur.